22-11951-F

---

IN THE

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕆𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

## FOR THE ELEVENTH CIRCUIT

_____

THE ESTATE OF SHIRLEY T. COX, by and through BETTY M. SMITH, Personal Representative, JOHN E. BALLEW, by and through JUDITH A. BALLEW, Attorney-in-Fact, and THE ESTATE OF ROGER J. LAPP, by and through MARK F. LAPP, Personal Representative,
*Plaintiffs/Appellants,*

v.

MICHAEL BOKOR,
*Defendant/Appellee.*
_____

On Appeal From The United States District Court For The Middle District Of Florida No. 8:18-cv-00381-MSS-AAS District Judge William F. Jung

_____

## APPELLANTS' BRIEF

_____

James L. Wilkes, II, Esquire
Florida Bar No. 405337
Bennie Lazzara, Jr., Esquire
Florida Bar No. 119568
Mary J. Perry, Esq.
Florida Bar 0887080
WILKES & ASSOCIATES, P.A.
One North Dale Mabry, Suite 800
Tampa, Florida 33609
813/873-0026 // 813/286-8820 Fax

*The Estate of Shirley T. Cox, et al. v. Michael Bokor*                    22-11951-F

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellants, The Estate of Shirley T. Cox, by and through Betty M. Smith, Personal Representative, John E. Ballew, by and through Judith A. Ballew, Attorney-in-Fact, and The Estate of Roger J. Lapp, by and through Mark F. Lapp, Personal Representative, through the undersigned counsel, hereby file this Certificate of Interested Persons and Disclosure Statement, which includes a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations known to Appellants who have or may have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, any publicly held company that owns 10 percent or more of a party's stock, and other identifiable legal entities related to a party.

1. Ballew, John, by and through Judith A. Ballew, Attorney-in-Fact, Plaintiff/Appellant

2. Bleich, Michael

3. Bogomilsky, Tzvi

4. Bokor, Michael Allen, Defendant/Appellee

5. Bradley Arant Boult Cummings, LLP, Counsel for Defendant/Appellee Michael Bokor

6.    Estate of Shirley T. Cox, by and through Betty M. Smith, Personal Representative, Plaintiff/Appellant

7.    Evans, Diana N., Counsel for Defendant/Appellee, Michael Bokor

8.    Gateway Acquisition, LLC

9.    Jung, Honorable William F., United States District Judge

10.    Karmel, Jacob

11.    Estate of Roger Lapp, by and through Mark F. Lapp, Plaintiff/Appellant

12.    Lazzara, Jr., Bennie, Counsel for Plaintiffs/Appellants

13.    Lichtschein, Teddy

14.    Lyric Health Care, LLC

15.    Lyric Health Care Holdings III, Inc.

16.    Lyric Health Care Holdings III, LLC

17.    Madonia, Zachary A., Counsel for Defendant/Appellee Michael Bokor

18.    Nicholson, Timothy F.

19.    Pennington, Michael R., Counsel for Defendant/Appellee Michael Bokor

20.    Perry, Mary J., Counsel for Plaintiffs/ Appellants

21.    Reliant Health Care Services, Inc.

22.    Robisch, Kyle, Counsel for Defendant/Appellee Michael Bokor

23.    Salyer, Robert E., Counsel for Plaintiffs/Appellants

24.    Sansone, Honorable Amanda Arnold, United States Magistrate Judge

*The Estate of Shirley T. Cox, et al. v. Michael Bokor*                    22-11951-F

25.    Scheiner, Eliezer

26.    Scriven, Honorable Mary S., United States District Judge

27.    Southern SNF Management, Inc.

28.    Stern, Nathan

29.    Wilkes, II, James L., Counsel for Plaintiffs/Appellants

30.    Wilkes & Associates, P.A. f/k/a Wilkes & McHugh, P.A., Counsel for Plaintiffs/Appellants

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE
STATEMENT .................................................................................C-1 – C-3

TABLE OF CONTENTS....................................................................i - ii

TABLE OF CITATIONS ................................................................. iii - v

STATEMENT REGARDING ORAL ARGUMENT ..............................1

STATEMENT OF JURISDICTION......................................................1

STATEMENT OF THE ISSUES...........................................................2

STATEMENT OF THE CASE...............................................................3

STATEMENT OF THE STANDARD OF REVIEW ...............................8

SUMMARY OF ARGUMENT ...............................................................8

ARGUMENT ........................................................................................11

    I.     The District Court's Order Adopting the Magistrate's Report and
         Recommendation misapprehended the role Appellee Bokor played in
         aiding a group of Florida nursing homes in providing false information
         applying for licenses from AHCA necessary for the operations of those
         homes, and it further misidentified Bokor as a real estate broker, thus
         discounting the legal framework in which Bokor was required to
         operate ...............................................................................11

    II.    The District Court erred in adopting in full the United States Magistrate
         Judge's Findings of Fact and Recommendations ("Report and
         Recommendations") that Appellants' First Amended Complaint be
         dismissed with prejudice, even though the Amended Complaint and
         related exhibits, memoranda of law, and analogous case law included
         significant information that Appellee Mr. Michael Bokor had filled out

or caused to be filled out inaccurate and false licensure information filed with the Florida Agency for Health Care Administration ("AHCA") which (1) claimed that there was no management company for the long term care skilled nursing home centers when there was, in fact, a management company; and (2) when Appellee Bokor also failed to disclose the persons/entities having "controlling interests in the relevant skilled nursing home facilities................................................13

III.    The District Court erred in adopting the Magistrate's Report and Recommendations which discounted Appellants' legal basis, allegations, and arguments that they had standing to sue due to the fact they alleged they had suffered economic injury,  and the District Court erred in its dismissal of a long body of similar Florida and Federal cases and statutory law under analogous situations, and erroneously ruled that such authority should not even be considered in the application of Federal and State regulatory statutes, principals, and laws to the situation set forth in Plaintiff's Amended Complaint, thereby losing recognition of the purpose of the statutory framework and case law in Florida which pertains to the licensure and operation of nursing homes................................................................................................17

IV.    The findings of fact and conclusions drawn from the Magistrate's Report and Recommendation did not fully consider the well pleaded factual allegations of Plaintiffs, and the Court's adoption of the Magistrate's Report and Recommendation is objectionable in that they totally discounted Plaintiffs' standing to bring this action based on Florida and Federal law and the facts specific to this lawsuit ............22

V.    Appellants' Motion for Leave to file Second Amended Complaint should have been granted ....................................................35

CONCLUSION......................................................................37

CERTIFICATION OF COMPLIANCE ..................................................38

CERTIFICATE OF SERVICE .............................................................39

## <u>TABLE OF CITATIONS</u>

**Cases**

*Beverly Enterprises v. Knowles,* 766 So.2d 926 (Fla. 4th DCA 2000).....................32

*Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898 (11th Cir.1998) ...............................................................................................28, 34

*Bryant v. Dupree,* 252 F.3d 1161 (11th Cir. 2001)....................................................36

*Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir.1994)....27, 34

*Dussouy v. Gulf Coast Investment Corp.,* 660 F2d 594 (former 5th Cir. 1981).......36

*Greenfield v. Manor Care,* 705 So.2d 926 (Fla. 4th DCA 1997) .............................32

*Forman v. Davis*, 371 U.S. 178 (1962)....................................................................36

*Mongiovi, et. al v. Vencor, et al.* (Order, Judge Bucklew, M.D. Fla. 1999) ...........32

*State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc..*, 2011 WL 6450769 (M.D.Fla.).........................................................................28, 34

*State Farm Mutual Automobile Insurance Company v. First Care Solution, Inc.*, 232 F.Supp.3d 1257 (S.D. Fla. 2017).................................................................18

*State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company v. B & A Diagnostic, Inc.*, 145 F.Supp.3d 1154 (S.D. Fla. 2015).20

*State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company v. Medical Service Center of Florida, Inc.*, 2014 WL 11910630 (S.D.Fla.) ...........................................................................................26

*State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579 (11th Cir. 2013) ...........................................................................................20, 21, 26

*Thomas v. Town of Davie,* 847 F.2d 771 (11th Cir. 1988) .......................................36

*Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277 (11th Cir.2006) ...................27, 34

**Statutes, Rules and Regulations**

Fla. Stat. § 400.071 ...................................................................26

Fla. Stat. § 400.111 ...................................................................26

Fla. Stat. § 408.400 ...................................................................15

Fla. Stat. § 408.802 ...................................................................15

Fla. Stat. § 408.806 ...................................................................26

Fla. Stat. § 408.806(1)(a)4 ........................................................14

Fla. Stat. § 408.806(1)(e) ..........................................................13

Fla. Stat. § 408.809 ...................................................................26

Fla. Stat. § 408.810 ...................................................................26

Fla. Stat. § 409.910 ...................................................................30

Fla. Stat. § 409.920 ...................................................................32

Fla. Stat. § 409.9101 .................................................................28

Fla. Stat. § 400.9935 ............................................................18, 21

Fla. Stat. § 627.732(11) ........................................................20, 21

Fed. R. Civ. P. 15(a) ..................................................................36

18 U.S.C. §1035 .........................................................................33

18 U.S.C. §1341 .........................................................................33

18 U.S.C. §1343 .........................................................................33

18 U.S.C. § 1962, et. seq. ...........................................................33

28 U.S.C. §158(d) ............................................................................1

28 U.S.C. § 1291 ..............................................................................5

28 U.S.C. § 1332 ..............................................................................5

42 U.S.C.A. §1320a-3 .............................................................2, 7, 9, 15, 16

42 C.F.R. 411.23 ..............................................................................28

42 C.F.R. 411.37 ..............................................................................28

42 C.F.R. 483.10 (10) – (11) (July 13, 2017) ..............................................29

42 C.F.R. § 483.10(f)(10)(ii)(B) ..............................................................32

**Other**

FLA. ADMIN. CODE ANN. Rule 59A-35.060 ..............................................26

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument in this case.  Given that this appeal involves complex legal and factual issues and a multifaceted procedural history, Appellants submit, and steadfastly believe, that oral argument will assist the court in resolving the issues on appeal.

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. §158(d), this Court has jurisdiction over the instant appeal of the final order of the United States District Court for the Middle District of Florida, Tampa Division ("District Court"), dismissing with prejudice the Amended Complaint of Appellants, a group of nursing home residents who brought class action claims against Appellee Michael Bokor.[1] (DC – DE -161, 158, 159). The District Court adopted in its entirety the Magistrate Judge's Findings of Fact and Recommendations ("Report and Recommendations").  (DC-DE-137).

On June 8, 2022, Appellants filed their Notice of Appeal (DC –162) of (DC-DE-158) (Order Adopting Report and Recommendation of the Magistrate), (DC-DE-159 (Order Granting DE-89 and DE-92, Motions to Dismiss), and (DC- DE-161,

---

[1] Citations to the record refer to the relevant docket and corresponding docket entry numbers in the District Court below.  Citations to the District Court docket entries directly below are designated as "DC-DE-_____."  Other citations to District Court docket entries other than in the underlying case are designated as "DC-DE-____[Case Number]-_____."  Florida State court citations are designated as "FL Cir. – [DE] [Case Number]".

1

Final Judgment).    Appellants subsequently dismissed Marcus & Millichap, Incorporated from this Appeal.

## STATEMENT OF THE ISSUES

I.    Whether the District Court's Order's characterization of Appellee Mr. Bokor as a real estate agent, constituted a fundamental misunderstanding by the Court of the role Mr. Bokor played in the misrepresentations he made to AHCA in order to obtain licenses for facilities for which he had a duty to disclose management and controlling interests under state and Federal law, including 42 U.S.C.A. §1320a-3,  and whether the Order erred in adopting in full the United States Magistrate Judge's Findings of Fact and Recommendations ("Report and Recommendations") that Appellants'   First Amended Complaint be dismissed with prejudice, even though the Amended Complaint and related exhibits, memoranda of law, and analogous case law included significant information that Appellee Mr. Michael Bokor had filled out or caused to be filled our inaccurate and false licensure information filed with the Florida Agency for Health Care Administration ("AHCA") which (1) claimed that there was no management company for the long term care skilled nursing home centers when there was in fact a management company; and (2) when Appellee Bokor also failed to disclose the persons/entities having "controlling interests" in the relevant skilled nursing home facilities.

II. Whether the District Court erred in adopting the Magistrate's Report and Recommendations which discounted Appellants' legal basis, allegations, and arguments that they had standing to sue due to the fact they alleged facts that they had suffered economic injury   and whether the District Court erred in its interpretation of Florida and Federal cases and statutory law under analogous situations and erroneously ruled that such authority did not apply to the situation set forth in Plaintiff's Amended Complaint, thereby losing recognition of the purpose of the statutory framework and case law in Florida which pertains to the licensure and operation of nursing homes.

III.   Whether the District Court also erred when it failed to permit Appellants to file a Second Amended Complaint on the grounds that it would be futile to do so.

## STATEMENT OF THE CASE

Appellants, the Estate of Shirley T. Cox, by and through Betty M. Smith, Personal Representative, ("Cox"); John E. Ballew, by and through Judith A. Ballew, attorney-in-fact ("Ballew"); and the Estate of Roger J. Lapp, by and through Mark F. Lapp, Personal Representative ("Lapp") were residents of various nursing homes. These nursing homes were affiliated with a group of entities which included Michael Bokor: an officer, CEO, and participant in a joint venture and ownership of a group

which owned, operated, and controlled approximately 22 nursing homes in Florida. Appellee Bokor was an officer, CEO, and a nominal owner in a management company named Reliant Health Care Services Company, Inc. ("Reliant"). Prior to and concurrent with his interest in Reliant, Bokor was also an officer, CEO, and a nominal owner of another management company named TL Management, LLC ("TL Management"). Both Reliant and TL Management are also affiliated with Eliezer Scheiner and Teddy Lichtschein.

Reliant, at all times relevant to this Appeal, was the management company providing management; oversight; hiring, firing, staffing of administrators, directors of nursing, and other personnel; and controlling many of the day-to-day affairs of the nursing homes where the named Plaintiffs resided. Ms. Cox was a resident of Woodbridge Care Center in Hillsborough County, Florida from December 6, 2016 until January 2, 2017. (DC-DE 82, par. 9.) Mr. Ballew was a resident of The Villages Rehabilitation and Nursing Center, in Lake County, Florida from March 8, 2015 through March 19, 2015. (DC-DE 82, par. 11). Mr. Lapp was a resident of Citrus Health and Rehabilitation Center, in Citrus County, Florida from May 30, 2016 through June 4, 2016, and from June 6, 2016 through June 30, 2016, and from July 18, 2016, until August 16, 2016. (DC-DE 82, par. 13.)

These three residents (through their representatives) filed a class action lawsuit in Florida Circuit Court for the Thirteenth Judicial Circuit on February 14,

2018, seeking economic damages.  The suit was subsequently removed to District Court for the Middle District of Florida, Tampa Division ("District Court") under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332.  (DC-DE 1, 2).  After the District Court remanded the case back to state court, Bokor sought discretionary review (DC-DE 46) and a direct appeal to the Eleventh Circuit.  (DC-DE 49).  On November 29, 2018, the Eleventh Circuit entered an order denying Bokor's application for discretionary review while allowing his direct appeal filed pursuant to 28 U.S.C. § 1291 to proceed.  (DC-DE 51).  On March 12, 2021, the Eleventh Circuit reversed the District Court's remand, and on April 12, 2021, the Mandate issued sending the case back to District Court. (DC-DE 67, 74).

On May 14, 2021, Appellants moved for leave to file an Amended Complaint (DC-DE 80) to place their Complaint in compliance with the Federal Rules of Civil Procedure after the Eleventh Circuit sent the case back to District Court.  On May 17, 2021, the District Court granted Appellants' Motion, and on May 18, 2021, the Appellants' Amended Complaint was filed. (DC-DE 81, 82). On June 11, 2021, Marcus & Millichap moved to Dismiss Appellants' Amended Complaint, and on June 16, 2021, Bokor moved to dismiss the Appellants' Amended Complaint. (DC-DE 89, 92).

On July 30, 2021, Appellants filed a Motion for Leave to file a Second Amended Complaint, (DC-DE 109) and on August 4, 2021, Appellants filed an

Amended Motion for Leave to Amend Complaint to Allege Additional Factual Material and Memorandum in Support. (DC-DE 113). Bokor and Marcus & Millichap filed objections to Appellants' Amended Motion to File [a Second] Amended Complaint. (DC-DE 116, 117). On September 16, 2021, Magistrate Sansone entered an order denying Appellants' motion to file the proposed Second Amended Complaint (DC-DE 118) and directed Appellants to respond to the Defendants' motions to dismiss the Amended Complaint by October 1, 2021. (*Id.*)

On December 7, 2021, a motion hearing was held before Magistrate Sansone on the pending motions to dismiss and strike exhibits from the Amended Complaint. (DC-DE 142). The Plaintiffs and Bokor also provided supplemental case law to the Court following the motion hearing. (DC-DE 134, 135). Subsequently, Magistrate Sansone issued a 27 page Report and Recommendation which recommended that the Defendants' motions to dismiss be granted. (DC-DE 137).

Appellants filed an Objection to the Magistrate's Report and Recommendations on March 7, 2022. (DC-DE 146). Appellee Bokor and Marcus & Millichap filed responses to Appellants' Objections to the Magistrate's Report and Recommendations. (DC-DE 154, 153]. The District Court, Judge Jung presiding, conducted a hearing on Appellants' Objections on April 20, 2022. (DC-DE, 155, 166). On May 9, 2022, Judge Jung entered an order adopting in full the Magistrate's Report and Recommendation (DC-DE 159) and granting Appellee

6

Bokor and Marcus & Millichap's Motions to Dismiss the Amended Complaint with prejudice.  (DC-DE, 159).

The Order Adopting Magistrate's Report and Recommendation reflects a fundamental misapprehension of the District Court below of the role of Defendant Michael Bokor, the president, and CEO of Reliant Health Care Services, Inc. who provided misleading and incorrect information to the AHCA personnel responsible for review of licensure information prior to licensing the relevant skilled nursing facilities where Plaintiffs resided.  Said Order erroneously refers to Mr. Bokor as a "real estate broker" for the nursing home facilities, and states that nursing home residents were bringing claims of nursing home licensing violations against "real estate broker Mr. Bokor"…… in holding that nursing home residents lacked standing to bring such claims against "real estate broker Mr. Bokor" and the marketing company Marcus & Millichap ("MMI").  (DC-DE 159, pg. 3)

The Court apparently continued with the misapprehension by stating in its Order, "Even if one of the speculative harms alleged by Plaintiffs amounted to an injury-in-fact, Plaintiffs have not demonstrated how any alleged injury would be traceable to Mr. Bokor or MMI as Defendants in this action." (DC-DE 159, pg. 4) However, this portion of the Order appears to erroneously view that Mr. Bokor was not a part of the actual nursing homes' management with mandatory disclosure obligations as contemplated by 42 U.S.C.A. §1320a-3.  On May 10, 2022, the

7

District Court Clerk entered a Judgment in favor of Defendants (DC-DE 161). Subsequently, Appellants filed their Notice of Appeal to the Eleventh Circuit on June 8, 2022 (DC-DE 162, 158, 159, and 161).

## STATEMENT OF THE STANDARD OF REVIEW

The District Court performed a d*e novo* review of Magistrate Judge Sansone's Report and Recommendations after Appellants filed their Objection to the Report and Recommendations. The Eleventh Circuit's standard of review of the District Court's Order adopting in full the Magistrate's Report and Recommendations and of the District Court's Order Dismissing Appellants' Amended Complaint with prejudice should also be *de novo*. This standard would also be necessary in light of the District Court's Order which, incorrectly on the facts before the Court, describes Mr. Bokor as a "real estate broker" with that characterization leading to erroneous conclusions of law.

## SUMMARY OF ARGUMENT

The District Court's characterization of Appellee Mr. Bokor as a real estate agent, constituted a fundamental misunderstanding by the Court of the role Mr. Bokor played in the misrepresentations on licensure applications he made or caused to be made to AHCA in order to obtain licenses for nursing home facilities including those where Plaintiffs resided. The misrepresentations occurred despite Mr. Bokor's

position as a president, CEO of certain skilled nursing facilities, including Citrus Health and Rehabilitation Center, and as an officer in managing entities, including Reliant Health Care Services, Inc. ("Reliant") for which he had a duty to disclose correct management and controlling interests under state and Federal law, including 42 U.S.C.A. §1320a-3.

The Order erred in adopting in full the United States Magistrate Judge's Findings of Fact and Recommendations ("Report and Recommendations")  that Appellants'  First Amended Complaint be dismissed with prejudice, even though the Amended Complaint and related exhibits, memoranda of law, and analogous case law included significant information and factual allegations that Appellee, Mr. Bokor, had filled out or caused to be filled out inaccurate and false licensure information filed with the Florida Agency for Health Care Administration ("AHCA") which (1) claimed that there was no management company for the long term care skilled nursing home centers when there was in fact a management company; and (2)  Appellee Bokor also failed to disclose the persons/entities having "controlling interests" in the relevant skilled nursing home facilities.

The District Court erred in adopting the Magistrate's Report and Recommendations which discounted Appellants' legal basis, allegations, and arguments that they had standing to sue due to the fact they had suffered economic injuries.  The District Court erred in its interpretation of Florida and Federal cases

9

and statutory law under analogous situations and erroneously ruled that such authority did not apply to the situation set forth in Appellants' Amended Complaint, thereby losing recognition of the purpose of the state and Federal statutory framework and regulatory system which pertains to the licensure and operation of nursing homes.

Finally, the District Court also erred when it failed to permit Appellants to file a Second Amended Complaint on the grounds that it would be futile to do so even though the Appellants had provided a specific and detailed proposed amended Complaint with supporting documentation attached as exhibits, and Appellee would not have been prejudiced by the length of the litigation as most of the time had been due to Mr. Bokor's appeal of the District Court's original remand of the removal by Bokor from state court of Appellants' original complaint.  The failure to permit a Second Amended Complaint, in light of the fact that the First Amended Complaint was filed to primarily bring the original Complaint in compliance with the Federal Rules of Civil Procedure disregarded the Federal Court practice of permitting at least one amended complaint.  Since Federal Courts are supposed to favor the liberal amendment of pleadings, under the circumstances and procedural history of this suit, it was an abuse of the Court's discretion to deny Plaintiffs/Appellants' Motion for Leave to File a Second Amended Complaint.

**ARGUMENT**

**I.    The District Court's Order Adopting the Magistrate's Report and Recommendation misapprehended the role Appellee Bokor played in aiding a group of Florida nursing homes in providing false information applying for licenses from AHCA necessary for the operations of those homes, and it further misidentified Bokor as a real estate broker, thus discounting the legal framework in which Bokor was required to operate.**

On page 3 of the District Court's Order (DC-DE 158, p. 3) which adopted in full the Magistrate's Report and Recommendations that the Amended Complaint of Plaintiffs/Appellants be dismissed with prejudice, Mr. Bokor is misidentified as a real estate broker, and he is then lumped together with Marcus & Millichap which was/is a real estate marketing company. The District Court's misapprehension of Mr. Bokor's role in this litigation is telling.  Acting solely as a "real estate broker" is one thing; acting in the role of procuring unlawful licenses, and conspiring to submit billing thereunder is another.

Appellants alleged:

[T]he services for which the non-party licensees, operators, managers, consultants, and owners of the Facilities, and Defendant MICHAEL BOKOR, obtained payments from Plaintiffs and the class members were not lawfully provided because: (a) the subject facilities were not validly licensed as required by Florida law, (b) the non-party licensees, operators, managers, consultants, and owners of the Facilities acted in concert with MICHAEL BOKOR to intentionally circumvent Florida's mandatory licensing requirements, and (c) the non-party licensees, operators, managers, consultants, and owners of the Facilities, in conjunction with MICHAEL BOKOR, used fraud and deception in their efforts to obtain skilled nursing home licenses.

11

(DC-DE 82, par. 3)  Very specifically Appellants further alleged "[b]y relying on the Certificates of Need and Licenses *fraudulently submitted* and ***obtained by*** Michael Bokor, many of the class Plaintiffs, to their detriment * * *." (*See* DC-DE 82, pars. 57, 58, 59 (emphasis added)).

The Court's misapprehension of the role of Mr. Bokor changed the tenor and tone of the Court's review of the Report and Recommendation.  The Order steers away from the legal requirements and regulatory framework for which Mr. Bokor and the nursing homes in which the putative class members resided were licensed, and focuses more on standing of the Appellants to sue for their economic losses.  If indeed the Court believed Mr. Bokor to be a real estate broker, rather than the president, CEO, and managing officer of the nursing homes where the Appellants resided, then this basic misunderstanding served to divert the focus of the Court's inquiry on this lawsuit from the regulatory framework and the false licensure application information submitted by Mr. Bokor through Reliant Health Care Services, Inc. ("Reliant") to one of what standing nursing home residents have to sue a real estate broker and a marketing company.  In so doing, the Order of the District Court was based on erroneous understanding of the parties, and the resulting dismissal with prejudice of Appellants' Complaint constitutes reversible error.  At a minimum, this Court should remand the case back to the District Court below with

12

instructions as to the actual positions held by Mr. Bokor, and the duties incurred thereby to residents.

**II.  The District Court erred in adopting in full the United States Magistrate Judge's Findings of Fact and Recommendations ("Report and Recommendations") that Appellants' First Amended Complaint be dismissed with prejudice, even though the Amended Complaint and related exhibits, memoranda of law, and analogous case law included significant information that Appellee Mr. Michael Bokor had filled out or caused to be filled out inaccurate and false licensure information filed with the Florida Agency for Health Care Administration ("AHCA") which (1) claimed that there was no management company for the long term care skilled nursing home centers when there was, in fact, a management company; and (2) when Appellee Bokor also failed to disclose the persons/entities having "controlling interests in the relevant skilled nursing home facilities.**

The Appellants' Amended Complaint contained numerous predicate facts in this case and had numerous exhibits attached to state sufficient facts and set forth sufficient causes of action to defeat Appellee's Motion to Dismiss.  As an example of the predicate facts in this case, for times material to this lawsuit, Mr. Bokor was the president/CEO of Citrus Health and Rehabilitation Center. ("Citrus") Bokor caused false information to be provided to AHCA in connection with the license application.  Said license was attached to the Amended Class Action Complaint (hereinafter "Amended Complaint"), (DC-DE 82, Exhibit E1 pp. 132-140).  The licensee in question never provided the name of the entity managing the facilities. Rather it denied that there was a management company.  *See* Fla. Stat. § 408.806(1)(e) (*see* DC-DE  82, Exhibit E1, p.135).  This was unlawful, if untrue.

Reliant Health Care Services, Inc., a management company and large health care cabal, took out an insurance policy on Citrus (*see* AC, Doc. 82, Exhibit E1, pp.2-4). Michael Bokor, identified on a Medicaid Cost Report as the CEO of Citrus (*see* AC, DC – DE 82, Exhibit E1, p.93), self-evidently served with Reliant Health Care Services (*see id.* (email address)). Ironically, he identified billing for management services on that same Medicaid Cost Report. (*See* AC, DC-DE 82, Exhibit E1, p.100). Even the Magistrate herself routinely referred to management companies and Mr. Bokor for the facilities in question. "Mr. Bokor owns the management companies that managed the twenty-two skilled nursing facilities, including SNF Management and Reliant." (Report and Recommendation, DC-DE 137, p. 4) Yet, the application denies the existence of a management company.

Furthermore, the facility controlling interests were never fully identified on the application,[2] which is again unlawful. *See* Fla. Stat. § 408.806(1)(a)4 (*see* AC, DC-DE 82, Exhibit E1, p.133). Certainly there was no disclosure of *Qui Tam* actions for violations of the False Claims Act in which Mr. Bokor was involved. (*see* DC-DE 82, Exhibit F).

---

[2] In the application definition, "controlling interests" are "**[1]** the applicant or licensee; **[2]** a person or entity that serves as an officer of, is on the board of directors of, or has a *5-percent or greater ownership interest in the applicant or licensee*; **[3]** or a person or entity that serves as an officer of, is on the board of directors of, or has a *5-percent or greater ownership interest in the management company or other entity, related or unrelated, with which the applicant or licensee contracts to manage the provider.*" (emphasis added)

14

It is readily apparent that, ***Defendant Bokor never identified such matters because they would have engendered investigations of all of Mr. Bokor's affiliations, and past histories going thereto, and endangered the possession of the Florida nursing home licenses*** in the larger cabal.  Rather, shell companies were created to wipe the slate clean for Mr. Bokor, and his backers (Messrs. Scheiner, Lichtschein, and others associated therewith, *see infra*), regarding their past nursing home infractions; and the unindicted co-conspirators (in the 22 nursing homes, including Citrus, along with Reliant, and Messers. Scheiner and Litchstein) conspired with Mr. Bokor to market the subject nursing homes, with knowledge of their unlawfully-licensed status.

Plaintiffs' Complaint allegations thus are premised on very clear Federal and Florida State regulations and law which set forth the requirement that every Florida nursing facility which participates in Medicare and Medicaid and which also has private pay residents, must follow and operate under within the framework of statutes and regulations including, Fla. Code. §§ 408.802, 400 (Part II, et seq.), and 42 U.S.C.A. §1320a-3 which require strict license applications and filings and disclosures, and this statute sets forth in detail what type of mandatory disclosures are required.

For instance, 42 U.S.C.A. §1320a-3 provides for  disclosure of ownership and related  information;  procedure;  definitions;  and  it  contains  the  scope  of

requirements. The definition section of §1320a-c(5)(B) defines "Facility" to mean a disclosing entity which includes -----

(i) a skilled nursing facility (as defined in section 1395i-3(a) of this title; or

(ii) a nursing facility (as defined in section 1396r(a) of this title).

§1320a-(c)(5)(C)3(C) defines a "managing employee" to mean with respect to a facility, an individual (including a general manager, business manager, administrator, director, or consultant who directly or indirectly manages, advises, or supervises any element of the practices, finances, or operations of the facility. §1320a-(c)(5)(D) defines the "organizational structure" of a facility, and sections (i), (ii), (iii), (iv), and (vi) set forth the various types of corporate entities, officers, directors, shareholders, managers, members, and individuals who are considered part of the organizational structure.   Under these definitions, Mr. Bokor is a managing employee of the skilled nursing facilities and he had duties under Federal and Florida law to ensure that his disclosures of management companies, ownership interests, and other items reported were true and correct.

Finally, under §1320a-(c)(5)(A), "Definitions", there are additional disclosable parties in subsection (5)(A) which include with respect to a facility, any person or entity who---

(i) **exercises operational, financial, or managerial control over the facility or a part thereof, or provides policies or procedures for any of the operations of the facility, or provides financial or cash management services to the facility**;

16

………………………………….

(iii) **provides management or administrative services, management or clinical consulting services, or accounting or financial services to the facility [emphasis supplied]**…..

Therefore, under both Federal and Florida law, Bokor as the president, and CEO of Citrus and the other 21 nursing home facilities, had a duty to accurately provide disclosures of managerial entities for each of the facilities. He failed to provide accurate information, in part, by essentially denying there were management companies. To have disclosed the management company and management structure in compliance with Federal and State law would have put him and his unindicted co-conspirators directly in the crosshairs of unwanted State and Federal scrutiny as Bokor and other participants in these nursing homes' operations and ownership had previously faced governmental agency scrutiny, and Qui Tam Actions. So Bokor did his best to keep his fellow joint venturers/undicted co-conspirators out of the unwanted regulatory spotlight. By doing so, he was essentially engaging in an enterprise which was operational solely through a license obtained by fraud and deceit.

**III. The District Court erred in adopting the Magistrate's Report and Recommendations which discounted Appellants' legal basis, allegations, and arguments that they had standing to sue due to the fact they alleged they had suffered economic injury, and the District Court erred in its dismissal of a long body of similar Florida and Federal cases and statutory law under analogous situations, and erroneously ruled that such authority should not even be considered in the application of Federal and State regulatory statutes, principals, and laws to the situation set forth in Plaintiff's Amended Complaint,**

**thereby losing recognition of the purpose of the statutory framework and case law in Florida which pertains to the licensure and operation of nursing homes.**

In analogous circumstances, Florida federal court opinions have stated that with respect to health care facilities that obtain their medical licenses based upon false representations, or willful misrepresentations:

> "[A]ll charges or reimbursement claims made by or on behalf of a clinic that is required to be licensed under this part, but that is not so licensed ... are unlawful charges, and therefore are noncompensable and unenforceable."

*State Farm Mutual Automobile Insurance Company v. First Care Solution, Inc.*, 232 F.Supp.3d 1257, 1266 (S.D. Fla. 2017) (quoting Fla. Stat. § 400.9935(3)[3]).  Further,

---

[3] Fla. Stat. § 400.9935 provides in part:

(3)   A charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of and punishable as provided in s. 812.014.

(4)(a)   Regardless of whether notification is provided by the agency under s. 408.812, a person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the person knowingly:

1.   Establishes, owns, operates, manages, or maintains an unlicensed clinic required to be licensed under this part or part II of chapter 408; or

2.   Offers or advertises services that require licensure as a clinic under this part or part II of chapter 408 without a license.

(b)   If the agency provides notification under s. 408.812 of, or if a person is arrested for, a violation of subparagraph (a)1. or subparagraph (a)2., each day during which a violation of subparagraph (a)1. or subparagraph (a)2. occurs constitutes a separate offense.

"[t]he statutory definition of 'lawful' or 'lawfully' means in substantial compliance with all relevant applicable ***criminal,***[4]

---

(c)   A person convicted of a second or subsequent violation of subparagraph (a)1. or subparagraph (a)2. commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. If the agency provides notification of, or if a person is arrested for, a violation of this paragraph, each day that this paragraph is violated thereafter constitutes a separate offense. For purposes of this paragraph, the term "convicted" means a determination of guilt which is the result of a trial or the entry of a plea of guilty or nolo contendere, regardless of whether adjudication is withheld.

(d)   In addition to the requirements of part II of chapter 408, a health care provider who is aware of the operation of an unlicensed clinic shall report the clinic to the agency. The agency shall report to the provider's licensing board a failure to report a clinic that the provider knows or has reasonable cause to suspect is unlicensed.

(e)   A person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the person knowingly:

1.   Files a false or misleading license application or license renewal application or files false or misleading information related to such application or agency rule; or

2.   Fails to report information to the agency as required by s. 408.810(3).

(5)   Any licensed health care provider who violates this part is subject to discipline in accordance with this chapter and his or her respective practice act.

[4] The allegations in the Amended Class Action Complaint implicate a number of criminal statutes. *See e.g.*, Fla. Stat. § 409.920 (Medicaid provider fraud) ("A person may not:… [k]nowingly make or in any way cause to be made any false statement or false representation of a material fact, by commission or omission, in any document containing items of income and expense that is or may be used by the agency to determine a general or specific rate of payment for an item or service provided by a provider."). By denying the existence of a management company in the Citrus Medicaid Cost Report, Michael Bokor was arguably in violation of this provision. *See also* Fla. Stat. § 409.9201 (Medicaid fraud) ("Any person who knowingly makes or knowingly causes to be made, or who attempts or conspires to make, any false statement or representation to any person for the purpose of obtaining goods or services from the Medicaid program commits a felony."). Federal law provides similarly. *See e.g.*, 42 USCA § 1320a-7b(c) (Criminal penalties for acts involving Federal health care programs).

19

> *civil, and administrative requirements of state* and federal law
> related to the provision of medical services or treatment."

*State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company v. B & A Diagnostic, Inc.*, 145 F.Supp.3d 1154, 1163 (S.D.Fla. 2015) (emphasis added) (quoting Fla. Stat. § 627.732(11)).  While the definitions described in *B & A Diagnostic* pertain specifically to Florida's No-Fault insurance provisions, the nursing home facility licensees here likewise have no lawful entitlement to compensation where state administrative requirements for licensure had been violated.  Indeed, in each instance of the plethora of *State Farm* cases cited, *see passim*, the Florida federal courts have held that the conduct of unlawfully-licensed licensees, and anyone involved therewith, give rise to causes of action sounding in fraud, civil conspiracy, violations of RICO, etc….  A survey of these cases make clear that unlawfully-obtained licenses, without addressing any question of a license void *ab initio*, give rise to such causes of action.

In *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579 (11th Cir. 2013), the defendant chiropractic clinic was alleged to have been unjustly enriched at State Farm's expense, through Silver Star's billing of State Farm at a time when Silver Star was unlicensed.  The Health Care Clinic Act required that all clinics such as Silver Star be licensed by the State, unless they fell within a statutory exemption.  One such exemption was sole ownership by an appropriate health care practitioner.  Silver Star had concealed its true ownership interest, of one who was

an unlicensed health care practitioner.  Silver Star had argued that determination of

appropriate licensure was a matter not consigned to courts for determination.  The

Eleventh Circuit disagreed:

> Its position is that because the Act does not expressly state that a
> violation of its licensing requirements can be determined by a
> court in a civil action, the district court erred by allowing State
> Farm's lawsuit to proceed.
>
> We disagree with Silver Star, as did the district court. Although
> the Act does not expressly refer to a judicial remedy, it provides
> that "[a]ll charges or reimbursement claims made by or on behalf
> of a clinic that is required to be licensed under this part, but that
> is not so licensed, or that is otherwise operating in violation of
> this part, are unlawful charges, and therefore are
> noncompensable and unenforceable." *Id.* § 400.9935(3).

*Id.* at 583.

The Eleventh Circuit made clear that to present a lawful and payable bill,

Silver Star had to be,

> in substantial compliance with ***all*** relevant applicable criminal,
> civil, ***and administrative requirements*** of state and federal law
> related to the provision of medical services and treatment," [Fla
> Stat. § 400.993]; [Fla. Stat.] § 627.732(11) (emphasis in *Silver
> Star*).

21

*Id.* So, the Magistrate here, despite the extensive class pleadings and exhibits, simply mistook the nature of Plaintiffs' claims for relief.[5]

**IV.   The findings of fact and conclusions drawn from the Magistrate's Report and Recommendation did not fully consider the well pleaded factual allegations of Plaintiffs, and the Court's adoption of the Magistrate's Report and Recommendation is objectionable in that they totally discounted Plaintiffs' standing to bring this action based on Florida and Federal law and the facts specific to this lawsuit.**

Plaintiffs' Amended Class Action Complaint brings claims on behalf of three named residents at three of the nursing homes with which Appellee has some undisclosed and fraudulent affiliations. Plaintiffs' Amended Class Action Complaint contains allegations about the operations of a group of skilled nursing facilities which consist of real and personal property owning facilities which are being marketed by MMI as a managed portfolio, managed by TL Management LLC with a purported principal place of business at 2071 Flatbush Ave. Suite, 22, Brooklyn, N.Y. 11234. The sole owners and Managing members of TL Management LLC are Eliezer Scheiner, and Teddy Lichtschein. (DC-DE 82, pars. 63-64).

The real and personal property comprising each of the 22 facilities are owned by either an entity solely owned by Eliezer Scheiner; an entity solely owned by

---

[5] For instance she stated, "the plaintiffs do not allege they personally experienced "substandard care," much less that the care provided had any connection to the licensure of the facilities or the named defendants." (Report and Recommendation, Doc. 137, pp. 8-9)

Teddy Lichtschein; or an entity jointly owned by both Scheiner and Lichtschein. (DC-DE 82, par. 64), referred to as the Landowner Entities. (Id.)

The Landowner Entities have operated a common enterprise, evidenced by common ownership and a common principal address. Defendant Michael Boker ("Bokor") along with his companies, Southern SNF Management, Inc. and Reliant Health Care Services, Inc. were vital components to this common enterprise at all material times. (Id., par. 66).

This common scheme and enterprise was being conducted to take as much profit as possible out of the facilities, at the expense of the health and welfare of the residents, including Plaintiffs and the Class members. Therefore, all of the residents at the Facilities during the relevant times were injured by being deceived into suffering substandard levels of care on a daily basis which put them in jeopardy. (Id., pars. 69-70). In other words, the Plaintiffs and Class members paid most of their social security and other pension checks over to the nursing homes, and encumbered their properties and estates with Medicaid liens for care being provided in derogation of Florida and Federal law by nursing homes that were only licensed through the provision of false information and the failure to disclose the relations amongst the entities and persons who actually owned and/or managed and/or controlled the nursing homes at issue.

There are rules and regulations pertaining to the operation of licensed Medicaid providers which required them to abide by all provisions of the Florida Statutes and the Florida Administrative Code which govern Medicaid providers. Some of these rules prohibit a Medicaid provider from being reimbursed for the price of rent is the provider leases the facility from a "related" organization. At the time of this suit, for most of the Facilities, the common enterprise utilized a master lease structure whereby all the facilities were bundled together under a master lease and required to make a single rent payment jointly. This source of funds for this collective payment was the monies received from nursing home residents which were pooled and comingled by the enterprise. (DC-DE 82, pars. 70-77).

Although the above common enterprise existed, the participants failed to provide accurate information and disclosures to State and Federal authorities, including AHCA, Medicare, and Medicaid. Due to the nature of the Landlord Entities as "related organizations", none of the purported licensees of the Facilities are legally allowed under Florida law to claim reimbursement for rent costs. (Id. pars. 81-82).

The licensee entities were formed for the specific purpose of appearing unrelated to the Landlord Entities, and appear to hold licenses for the sake of AHCA. However, the provisions of the relevant leases maintained the status of the Landowner Entities as the true License owner and holder. The licensee entities were

24

also formed as deliberate undercapitalized shells, with inadequate insurance for the specific purpose of limiting the potential liability to future creditors, including Plaintiffs and Class members. (DC-DE 82, pars. 84-86).

The state licensure applications which deliberately and affirmatively concealed the Management Companies were routinely signed under penalty of perjury by employees of the Management Companies, including Mr. Bokor himself. Mr. Bokor signed under penalty of perjury the licensure application for Woodbridge Care Center filed in or around 2009 and on later occasions as an "authorized representative" of the applicant.    This application affirmatively stated that Woodbridge Care Center was not managed by any entity other than the licensee. (DC-DE 82, pars. 98-99, including subparts).

Plaintiffs take issue with the analysis performed on Plaintiffs' Article III standing.  The Report and Recommendation fails to fully consider the injury-in-fact allegations and information provided in Plaintiffs' Amended Class Action Complaint and in the attachments thereto.  Plaintiffs did indeed plead injury-in-fact to themselves.

Thus the Magistrate's determination that no cognizable injury has been alleged, for purposes of standing, fails to comprehend the nature of the class's injury. A violation of Florida's licensing provisions ***does create standing*** for a cause of action.

25

Defendants argument that State Farm may not predicate their causes of action upon the Defendants' violation of the Health Care Clinic Act ("HCCA") is incorrect. In *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579 (11th Cir. 2013), the Eleventh Circuit found that State Farm did, in fact, have a judicial remedy against the defendants ***for violations of the licensing requirements under the HCCA***. * * *

*Silver Star* is also instructive on Defendants argument that State Farm lacks standing to bring their claims. ***By finding that State Farm had a judicial remedy against defendants for violations of the HCCA the court impliedly found that State Farm had standing to bring its claims***.

*State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty Company v. Medical Service Center of Florida, Inc.*, 2014 WL 11910630 *4 (S.D.Fla.).  Again, although the case at bar is not predicated on a violation of the HCCA, it is predicated on the similar license requirements applicable to all nursing homes.  *See e.g.*, FLA. ADMIN. CODE ANN. Rule 59A-35.060 (Licensure Application Process); Fla. Stat. §§ 400.111 (Disclosure of controlling interest), 408.806 (License application process), 408.809 (Background screening; prohibited offenses), 408.810 (Minimum licensure requirements).

Indeed, Fla. Stat. §§ 400.071 (Application for license) provides the following:

(1) In addition to the requirements of part II of chapter 408, the application for a license shall be under oath and must contain the following:

* * *

(b) A signed affidavit disclosing any financial or ownership interest that a controlling interest as defined in part II of chapter 408 has held in the last 5 years in any entity licensed by this state or any other state to

provide health or residential care which has closed voluntarily or involuntarily; has filed for bankruptcy; has had a receiver appointed; has had a license denied, suspended, or revoked; or has had an injunction issued against it which was initiated by a regulatory agency. The affidavit must disclose the reason any such entity was closed, whether voluntarily or involuntarily.

To compound the Magistrate's errors, in addressing Plaintiffs' RICO allegations and proximate cause of injury she stated this,

> Mr. Boker's (sic) role in the licensure of the facilities (only three of the twenty-two named facilities were occupied by the plaintiffs) did not injure the plaintiffs. * * * [T]he alleged fraudulent claims made to Medicare or Medicaid would cause an injury to Medicare or Medicaid, not the plaintiffs.

(Report and Recommendation, Doc. 137, p. 17)  This flies in the face of this very Court's treatment of proximate cause in the context of a similar case involving RICO allegations, wherein a health care entity falsified a license application, to bill insurance for health care services:

> Defendants move to dismiss Counts IV and V [RICO] for three reasons: (1) failure to meet the pleading requirements of Rule 9(b); (2) failure to allege sufficient "concrete loss"; and (3) lack of causation. The first two arguments are based entirely on Defendants' erroneous interpretation of the statute and will be denied. Defendants' argument regarding causation merits further discussion.

> Although the inquiries often blend together, the "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir.2006). A wrongful act is "a proximate cause if it is a substantial factor in the sequence of responsible causation." *Cox*

27

*v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir.1994) (internal quotation omitted). ***In contrast***, "***the test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable.***" *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir.1998).

* * *

***<u>Fraudulently obtaining a license</u>***… is not an end in itself; rather, ***<u>it is a means to obtain payment for services that one would not otherwise be entitled to</u>. That is sufficient to establish the requisite <u>causation</u>.***

*State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc..*, 2011 WL 6450769 *6 (M.D.Fla.) (emphasis added).

Per the allegations, which must be accepted at this stage as true, the class members have been ultimately saddled with unlawful bills and/or debts. The Medicare/Medicaid benefits paid here were "conditional payments," *i.e.*, they constituted debts ultimately incurred by the nursing home residents, or their subsequent probate estates. The payments under these circumstances by Medicare were "conditional payments." *See e.g.*, 42 C.F.R. 411.23; 42 C.F.R. 411.37. That is, the Medicare recipient is liable to reimburse Medicare for these payments if possible. Additionally, Florida's Medicaid Recovery Act provides that Medicaid may seek reimbursement from the probate estates of Medicaid recipients. *See* Fla. Stat. § 409.9101. In effect, here the nursing home residents borrowed money (from Medicare/Medicaid) to pay to the unlawfully-licensed licensee. It was Mr. Bokor

who fraudulently acquired the license for the licensee, as well as submitted the Medicare/Medicaid claims, to in effect borrow the money on the residents' behalf; and it was MMI and unindicted co-conspirators that conspired with Mr. Bokor to this end.

The scheme in which Bokor was an active participant caused financial injury to the nursing home residents. Most nursing home residents are in Medicare and a large portion of these residents also become eligible for Medicaid as their assets are spent down in payment for the nursing home's services.

Furthermore, with Medicare Part A, a patient is only eligible for a limited number of days at a skilled nursing home facility *during that person's lifetime.* The time is generally 60 days for Medicare Part A. Thereafter, Medicare Part B kicks in, if necessary and applicable. If the resident is on Medicare Part B, a **co-payment** is required. Further, the skilled nursing facilities may take most of the resident/patient's social security and/or other monthly income, often leaving the resident/patient with only a nominal amount to buy small personal items throughout the month. (42 C.F.R. § 483.10(f)(10)(ii)(B)).

Furthermore, as to Medicaid, this program is not welfare; it is in effect a loan, one for which the residents are legally responsible (if not always practically-able to meet). First, in order to be eligible for Medicaid, the rules require that each recipient "*spend down*" his or her own assets to $2,000 or under in order for eligibility, and

this "spending down" may be to pay for therapy services. Furthermore, there are the potential for *liens and/or claims* which may attach to a Medicaid resident's property or a deceased Medicaid resident's estate. (Fla. St. Ann. § 409.910).

Ergo, there is an injury-in-fact sufficient to confer standing. The District Court and magistrate disregarded Appellants' long *State Farm*-line of precedent with the observation that while an insurer may be able to compel disgorgement in similar circumstances, Appellants had not pointed to any case where a nursing home resident had acted to effect, in essence, the same thing. Given that nursing home residents, unlike insurers, do not maintain a stable of attorneys searching for malfeasance on the part of unscrupulous providers and their enablers, this paucity of similar nursing home resident examples is perhaps not surprising. Appellants should not be penalized for this circumstance because, in any event, the principles involved are exactly the same. When Mr. Bokor conspired to procure spurious licensure, all the while holding the facilities out as properly licensed, the nursing home residents were cheated out of Medicare/Medicaid resources as surely as State Farm may have been cheated in paying bills submitted by unlawfully licensed health care providers.

If skilled nursing facility residents who were duped into putting their health, care, and their finances, and literally their lives into the hands of the dishonest facility owners and managers have no injury in fact as the Magistrate finds in the Report and Recommendation, they are being deprived of their right to redress

tangible financial injuries as they are paying people and entities whose fraudulent licensure activities and efforts to market the facilities  are the common thread through and the chief commonality in this criminal enterprise.  For every bill sent out, every payment accepted by the wrongfully licensed entities, every successful sale of skilled nursing facilities, Appellee and his co-conspirators are allowed to wrongfully reap the fruits of their conspiracy to maximize their returns and profits they have taken through what amounts to unlicensed and misrepresented operations which  exploit very vulnerable and trusting people who have reposed their trust, funds, and their health and lives in the Appellee's deceptive and fraudulent operations.

The above scheme described and pled in Plaintiffs Amended Class Action Complaint and illustrated with the numerous Exhibits attached sets forth claims which the Plaintiffs should have Article III standing to bring.  It is Appellants and other skilled nursing home residents who are suffering from harm by the Appellee and his co-conspirators.  Appellee and his co-conspirators who have wrongfully engaged in the aiding and abetting the breach of fiduciary duties owed to the residents of the nursing homes in question.

The Report and Recommendation appears to take the erroneous position that nursing home residents may only recover for physical injuries.  This contradicts prior Florida court rulings which have allowed breach of fiduciary claims to proceed

against skilled nursing facilities.  See *Greenfield v. Manor Care,* 705 So.2d 926 (Fla. 4th DCA 1997), *receded from for other reasons due to change in statute re personal injury recovery,  Beverly Enterprises v. Knowles,* 766 So.2d 926 (Fla. 4th DCA 2000); *Mongiovi, et. al v. Vencor, et al.* (Order, Judge Bucklew, M.D. Fla. 1999) (DC-DE 146-1).  Moreover, a licensee who is providing a professional service while holding a license obtained through fraud, is providing presumptively substandard service per se.

The proposed findings in the Report and Recommendation also ignore Federal Nursing Home Residents' Rights set forth in 42 C.F.R. 483.10 (10) – (11) (July 13, 2017) which seek to protect the civil, financial, and personal rights of residents, including the financial rights of residents to have thorough safekeeping and accounting of their funds and payments by nursing homes.  Further, Florida state entities including AHCA and various Florida Statutes, including Fla. Stat. § 409.920, recognize the threats to residents and to the payment programs such as Medicaid of entities and persons who engage in false, deceptive, and fraudulent practices.  Surely, this Court should recognize the value of Plaintiffs, their claims, and their histories at these facilities.   The lawsuit has raised very significant and real problems confronting nursing home residents, and their caregivers.

Appellee Mr. Bokor and his unindicted co-conspirators are engaging in reaping the economic rewards of sales, purchases, and obtaining licenses for the

facilities in question through fraudulent use of the licensure process. The pleadings of the Amended Class Action Complaint clearly meet the pleading prerequisites for stating a viable claim for Defendants' violations of RICO, 18 U.S.C. § 1962, et. seq. Appellants have alleged a practice and pattern of racketeering activity which consists of two or more predicate acts including: wire fraud in using electronic transmission of fraudulent information to licensing authorities in violation of 18 U.S.C. §1343; mail fraud by sending various fraudulent licensure and CHOW materials through the United States mail and/or through the use of an overnight service such as Federal Express in violation of 18 U.S.C. §1341. Even the violations of 18 U.S.C. §1035 (making false statements relating to health care matters), while not specifically named as a statutory predicate act, was accomplished through mail and wire fraud which are indeed statutory enumerated predicate RICO acts. For the above reasons, Appellants submit that their Amended Class Action Complaint has made sufficient factual allegations to state claims for RICO violations against Appellee.

To compound the Magistrate's errors, in addressing Plaintiffs' RICO allegations and proximate cause of injury she stated this,

> Mr. Boker's role in the licensure of the facilities (only three of the twenty-two named facilities were occupied by the plaintiffs) did not injure the plaintiffs. * * * [T]he alleged fraudulent claims made to Medicare or Medicaid would cause an injury to Medicare or Medicaid, not the plaintiffs.

(DC-DE 137, p. 17.)  This flies in the face of this very Court's treatment of proximate cause in the context of a similar case involving RICO allegations, wherein a health care entity falsified a license application, to bill insurance for health care services:

> Defendants move to dismiss Counts IV and V [RICO] for three reasons: (1) failure to meet the pleading requirements of Rule 9(b); (2) failure to allege sufficient "concrete loss"; and (3) lack of causation. The first two arguments are based entirely on Defendants' erroneous interpretation of the statute and will be denied. Defendants' argument regarding causation merits further discussion.

> Although the inquiries often blend together, the "by reason of" requirement implicates two concepts: (1) a sufficiently direct injury so that a plaintiff has standing to sue; and (2) proximate cause. *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1287 (11th Cir.2006). A wrongful act is "a proximate cause if it is a substantial factor in the sequence of responsible causation." *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir.1994) (internal quotation omitted). ***In contrast***, "***the test for RICO standing is whether the alleged injury was directly caused by the RICO violation, not whether such harm was reasonably foreseeable.***" *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 908 (11th Cir.1998).

> \* \* \*

> <u>***Fraudulently obtaining a license***</u>… is not an end in itself; rather, ***it is a means to obtain payment for services that one would not otherwise be entitled to***. ***That is sufficient to establish the requisite*** <u>***causation***</u>.

*State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc..*, 2011 WL 6450769 \*6 (M.D.Fla.) (emphasis added).

**V. Appellants' Motion for Leave to file Second Amended Complaint should have been granted.**

Appellants submit that the denial of their motion to file a Second Amended Complaint significantly prejudiced them in their defense against Appellee Bokor's Motions to Dismiss the first Amended Complaint. The original Complaint was drafted to meet Florida state court pleading standards, and as such, it was designed differently from a pleading for a case in federal court. Once the case was remanded back to the District Court by the Eleventh Circuit's reversal of the original District Court remand of the case to state court, Appellants requested leave to file an Amended Complaint, which leave was granted. Defendants then filed motions to dismiss the Amended Complaint.

Although Appellants disagreed with the arguments and characterizations that Defendants advanced in their respective Motions to Dismiss, Appellants thereafter sought to file a Second Amended Complaint which contained factual allegations and factual material to further elaborate upon the allegations of ultimate fact already alleged. In essence, the proposed Second Amended Complaint provided more detailed claims and exhibits than did Appellants' Amended Complaint. (DC-DE Doc. 109-1). Indeed, because the Amended Complaint was, in reality, the first pleading designed for federal court requirements, the proposed Second Amended Complaint was more akin to an Amended Complaint in the federal court context.

35

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." The Supreme Court has long held that leave sought should be "freely given" as the rules require, in "the absence of any apparent or declared reason- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc…." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

The Eleventh Circuit has also mandated that leave to amend shall be freely given: "A district court's discretion to dismiss a complaint without leave to amend 'is 'severely restrict[ed]' by Fed. R. Civ. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001), quoting *Thomas v. Town of Davie,* 847 F.2d 771, 773 (11th Cir. 1988) (citation omitted). "[U]less there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Thomas,* 847 F.2d at 773 (quoting *Dussouy v. Gulf Coast Investment Corp.,* 660 F2d 594, 598 (former 5th Cir. 1981)).

In this case, Appellants submit that the District Court should have allowed Appellants to file their proposed Second Amended Complaint which was designed to further clarify the allegations against Defendants and the damages sustained by

Appellants and it would have ultimately preserved both judicial and litigation resources.

Appellants have not engaged in undue delay, bad faith or dilatory conduct which would preclude amendment at the early stage in the litigation. (Although this case was filed in 2018, most of the time has been consumed with removal, remand, an appeal to the Eleventh Circuit filed by Mr. Bokor, and, finally, reversal and remand back to District Court). Thus, this case is still in the early stages as far as pleading and actual case litigation are concerned.

As far as futility, a proposed claim is futile only if it is clearly frivolous or cannot state a viable claim for recovery. As shown by the law cited hereinabove, neither the Appellants' Amended Complaint nor the Appellants' proposed Second Amended Complaint were frivolous or futile. As such, the denial of Appellants' ability to file a Second Amended Complaint was highly prejudicial and was improper as a matter of law.

## CONCLUSION

For the reasons set forth herein, the Appellants respectfully request that this Court reverse the District Court's Order which adopted in full the Magistrate's Report and Recommendations, and that this Court reverse the Order Denying Plaintiffs' Motion to File a Second Amended Complaint, with instructions to return said Orders below for actions consistent with this Court's Order.

37

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure Because this brief contains 9,069 words, excluding the parts of the brief exempted by Rule 32(f).  The document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of the rule because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14 point font.

Respectfully submitted,

*/s/ James L. Wilkes, II*
James L. Wilkes, II, Esquire
Florida Bar No. 405337
Bennie Lazzara, Jr., Esquire
Florida Bar No. 119568
Mary J. Perry, Esq.
Florida Bar 0887080
mperry@yourcasematters.com
WILKES & ASSOCIATES, P.A.
One N. Dale Mabry Hwy, Ste. 800
Tampa, FL  33609
Telephone: 813-873-0026
Facsimile: 813-286-8820
Primary: jimw@yourcasematters.com
dthomason@yourcasematters.com
FL@yourcasematters.com
*Attorneys for Appellants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 16, 2022, a true and correct copy of

the foregoing was served upon all counsel of record via CM/ECF electronic notice.

*/s/ James L. Wilkes, II*