**No. 22-11951-CC**

# In the
# United States Court of Appeals
# for the Eleventh Circuit

◆

THE ESTATE OF SHIRLEY T. COX, *by and through* BETTY M. SMITH, *Personal Representative,* JOHN E. BALLEW, *by and through* JUDITH A. BALLEW, *Attorney-in-Fact, and* THE ESTATE OF ROGER J. LAPP, *by and through* MARK F. LAPP, *Personal Representative,*

*Plaintiffs/Appellants,*

v.

MICHAEL BOKOR,

*Defendant/Appellee*

◆

On Appeal from the United States District Court
for the Middle District of Florida, Tampa Division
Case No. 8:18-cv-381-T-02AAS

◆

**BRIEF OF APPELLEE MICHAEL BOKOR**

◆

BRADLEY ARANT BOULT CUMMINGS LLP

| | |
|---|---|
| Michael R. Pennington | Diana N. Evans |
| Zachary A. Madonia | Kyle W. Robisch |
| 1819 5th Avenue North | 100 North Tampa Street, Suite 2200 |
| Birmingham, AL 35203 | Tampa, FL 33602 |
| (205) 521-8000 | (813) 559-5500 |

*Counsel for Defendant/Appellee Michael Bokor*

*The Estate of Shirley T. Cox v. Bokor*,

No. 22-11951-CC

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant/Appellee Michael Bokor hereby files this Certificate of Interested Persons and Corporate Disclosure Statement, which includes a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations known to Bokor who have or may have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, any publicly held company that owns 10 percent or more of a party's stock, and other identifiable legal entities related to a party.

1. Ballew, John E., by and through Judith A. Ballew, Attorney-in-Fact—Plaintiff/Appellant

2. Bleich, Michael

3. Bogomilsky, Tzvi

4. Bokor, Michael Allen—Defendant/Appellee

5. Bradley Arant Boult Cummings, LLP—Attorneys for Defendant/Appellee Michael Bokor

6. The Estate of Roger J. Lapp, by and through Mark F. Lapp, Personal Representative—Plaintiff/Appellant

7. The Estate of Shirley T. Cox, by and through Betty M. Smith, Personal Representative—Plaintiff/Appellant

8. Evans, Diana N.—Attorney for Defendant/Appellee Michael Bokor

*The Estate of Shirley T. Cox v. Bokor*,

No. 22-11951-CC

9. Gateway Acquisition, LLC

10. Jung, The Honorable William F.—United States District Judge

11. Karmel, Jacob

12. Lazzara, Jr., Bennie—Attorney for Plaintiffs/Appellants

13. Lichtschein, Teddy

14. Lyric Health Care, LLC

15. Lyric Health Care Holdings III, Inc.

16. Lyric Health Care Holdings III, LLC

17. Madonia, Zachary A.—Attorney for Defendant/Appellant Michael Bokor

18. Nicholson, Timothy F.

19. Pennington, Michael R.—Attorney for Defendant/Appellee Michael Bokor

20. Perry, Mary. J.—Attorney for Plaintiffs/Appellants

21. Reliant Health Care Services, Inc.

22. Robisch, Kyle W.—Attorney for Defendant/Appellee Michael Bokor

23. Salyer, Robert E.—Attorney for Plaintiffs/Appellants

24. Sansone, The Honorable Amanda Arnold—United States Magistrate Judge

25. Scheiner, Eliezer

26. Scriven, The Honorable Mary S.—United States District Judge

27. Southern SNF Management, Inc.

*The Estate of Shirley T. Cox v. Bokor*,

No. 22-11951-CC

28.    Stern, Nathan

29.    Wilkes, II, James L.—Attorney for Plaintiffs/Appellants

30.    Wilkes & McHugh, P.A.—Attorneys for Plaintiffs/Appellants

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Oral argument would not significantly aid the decision process in this appeal. The facts and legal arguments are straightforward and adequately presented in the briefs and record.

## <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................ i

TABLE OF AUTHORITIES ................................................ iv

JURISDICTIONAL STATEMENT ........................................ ix

STATEMENT OF THE ISSUES..............................................1

INTRODUCTION ................................................................4

STATEMENT OF THE CASE.................................................8

I.     Statement of Facts.................................................8

II.    The Course of Proceedings and Disposition Below .....................11

III.   Standard of Review...........................................16

SUMMARY OF THE ARGUMENT ....................................18

ARGUMENT ....................................................................21

I.     The Court should affirm the district court's order dismissing the
       Amended Complaint.................................................21

       A.     Appellants waived the right to challenge most of the district
              courts' grounds for dismissal and the conceded grounds provide
              an adequate basis to affirm................................ 21

              1.     Appellants waived their right to challenge the dismissal of
                     their claim for aiding and abetting a breach of fiduciary
                     duty...........................................................22

              2.     Appellants waived their right to challenge the dismissal of
                     their RICO claims. ....................................28

3.    Appellants waived their right to challenge the district court's dismissal under the primary administrative jurisdiction doctrine. ................................................32

4.    Appellants waived their right to challenge the district court's dismissal pursuant to the Colorado River doctrine. ................................................................33

5.    Appellant Lapp waived its right to challenge the district court's conclusion that its claims are res judicata. ...................34

B.    Appellants' properly preserved objections provide no basis for overruling the district court's order. .....................................35

1.    The district court correctly concluded that Appellants cannot pursue a claim based on alleged misstatements in a nursing facility license application. ...........................................36

2.    The district court correctly concluded that Appellants do not have standing to personally recover for alleged improper claim submitted to Medicare and/or Medicaid. ........44

3.    The district court correctly concluded that Appellants failed to allege proximate causation for their RICO claims. ................................................................46

4.    The district court's reference to Bokor as a "real estate broker" was inconsequential. .....................................48

II.    The Court should affirm the district court's order denying Appellants leave to amend the operative complaint. .......................................50

CONCLUSION ................................................................52

CERTIFICATE OF COMPLIANCE .....................................54

CERTIFICATE OF SERVICE ...............................................55

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Amey, Inc. v. Gulf Abstract & Title, Inc.*,
   758 F.2d 1486 (11th Cir. 1985) ..........................................................35

*Estate of Ayres v. Beaver*,
   48 F. Supp. 2d 1335 (M.D. Fla. 1999) ...............................................44

*Boyes v. Shell Oil Prods. Co.*,
   199 F.3d 1260 (11th Cir. 2000) ...................................................17, 33

*Brooks v. Blue Cross & Blue Shield of Fla.*,
   116 F.3d 1364 (11th Cir. 1997) ...................................................29, 32

*Burchfield v. Realty Exec.*
   971 So. 2d 138 (Fla. 5th DCA 2007) ...................................................28

*Cisneros v. Petland, Inc.*,
   972 F.3d 1204 (11th Cir. 2020) ..........................................................29

*Citizens for Smart Growth v. Sec'y of Dep't of Transp.*,
   669 F.3d 1203 (11th Cir. 2012) ...................................................37, 49

*Discon, Inc. v. NYNEX Corp.*,
   93 F.3d 1055 (2d Cir. 1996) ...............................................................46

*Doctors Health, Inc. v. Aetna (In re Managed Care Litig.)*,
   605 F.3d 1146 (11th Cir. 2010) ..........................................................17

*Est. of Joellen Brainerd v. Bokor*,
   No. 2018-CA-000204 (Fla. Cir. Ct. Sept. 18, 2018) ..........................23

*Fernau v. Enchante Beauty Prods.*,
   847 F. App'x 612 (11th Cir. 2021) ........................................25, 31, 32

*Glover v. Liggett Grp., Inc.*,
   459 F.3d 1304 (11th Cir. 2006) ..........................................................45

*Greenfield v. Manor Care*,
   705 So. 2d 926 (Fla. 4th DCA 1997) ...................................................27

*Haynes v. McCalla Raymer, LLC*,
  793 F.3d 1246 (11th Cir. 2015) ........................................................... 17

*Hull v. Burwell*,
  66 F. Supp. 3d 278 (D. Conn. 2014) ..................................................... 46

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*,
  634 F.3d 1352 (11th Cir. 2011) ........................................................... 17

*Jackson v. BellSouth Telecomms.*,
  372 F.3d 1250 (11th Cir. 2004) ........................................................... 29

*Jang v. United Techs. Corp.*,
  206 F.3d 1147 (11th Cir. 2000) (*res judicata*) ................................... 17

*McCullars v. SSA*,
  825 F. App'x 685 (11th Cir. 2020) ....................................................... 25

*McKinnon v. Blue Cross & Blue Shield of Ala.*,
  935 F.2d 1187 (11th Cir. 1991) ............................................... 28, 38, 43

*Mongiovi v. Vencor*,
  Case No. 98-769 (M.D. Fla. Apr. 16, 1999) ......................................... 26

*Muniz v. GCA Servs. Grp., Inc.*,
  2006 WL 2130735 (M.D. Fla. July 28, 2006) ....................................... 23

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ........................................................... 47

*Reimsnyder v. SouthTrust Bank, N.A.*,
  2001 WL 36207301 (Fla. Cir. Ct. Nov. 16, 2001) ............................... 23

*S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*,
  365 F. App'x 202 (11th Cir. 2010) ....................................................... 23

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) ............................................................. 25

*Schwartzberg v. Knobloch*,
  98 So. 3d 173 (Fla. 2d DCA 2012) ........................................................ 8

*Sexton v. Medicare*,
  194 F. Supp. 3d 209 (E.D.N.Y. 2016) ..........................................................45, 46

*Smith v. Marcus & Millichap, Inc.*,
  991 F.3d 1145 (11th Cir. 2021) ................................................................................xi

*Smith v. School Bd. of Orange Cnty.*,
  487 F.3d 1361 (11th Cir. 2007) .............................................................................51

*State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*,
  739 F.3d 579 (11th Cir. 2013) ..................................................................39, 40, 41

*State Farm Mut. Auto Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*,
  2011 WL 6450769 (M.D. Fla. Dec. 21, 2011) ....................................................47

*State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*,
  145 F. Supp. 3d 1154 (S.D. Fla. 2015) ...........................................................39, 41

*State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*,
  232 F. Supp. 3d 1257 (S.D. Fla. 2017) (Br. ) ................................................39, 41

*State Farm Mut. Auto Ins. Co. v. Med. Serv. Ctr. of Fla.*,
  103 F. Supp. 3d 1343 (S.D. Fla. 2015) .................................................................43

*State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. Of Fla.*,
  2014 WL 11910630 (S.D. Fla. Sept. 15, 2014) .....................................39, 42–43

*Taylor v. Pekerol*,
  760 F. App'x 647 (11th Cir. 2019) .......................................................................17

*Thacker v. Tenn. Valley Auth.*,
  868 F.3d 979 (11th Cir. 2017) ...............................................................................16

*Topps v. State*,
  865 So. 2d 1253 (Fla. 2004) ..................................................................................35

*TranSouth Fin. Corp. v. Bell*,
  149 F.3d 1292 (11th Cir. 1998) (*Colorado River*) .............................................17

*United States v. Schultz*,
  565 F.3d 1353 (11th Cir. 2009) ...............................................................24, 31, 34

*United States v. W. Pac. R.R. Co.*,
  352 U.S. 59 (1956)......................................................................33

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)....................................................................46

**Statutes**

18 U.S.C. § 1035..................................................................30, 31

28 U.S.C. § 1332(d) ................................................................x, 11

18 U.S.C. § 1341.........................................................19, 30, 31

18 U.S.C. § 1343.........................................................19, 30, 31

18 U.S.C. §§ 1961–1968 ................................................................xi

18 U.S.C. § 1961(1) ..............................................................29, 30

18 U.S.C. § 1962 ............................................................................11

18 U.S.C. § 1962(a) ......................................................................29

18 U.S.C. § 1962(b) ................................................................19, 29

18 U.S.C. § 1962(c) ................................................................19, 29

18 U.S.C. § 1962(d) ................................................................19, 29

18 U.S.C. § 1964(c) ......................................................................46

28 U.S.C. § 158(b) ........................................................................xi

28 U.S.C. § 636(b)(1)(C) ..............................................................14

28 U.S.C. § 1291 ...........................................................................xi

28 U.S.C. § 1331 ...........................................................................xi

28 U.S.C. § 1367 ...........................................................................xi

Fla. Stat. § 400.022 ......................................................................28

Fla. Stat. § 400.23(2).....................................................................32

Fla. Stat. § 400.121(1)..................................................................32, 38

Fla. Stat. § 400.9935(3)...............................................................39, 40

Fla. Stat. § 408.806 ...........................................................................37

Fla. Stat. § 408.812(2)..................................................................37, 40

Fla. Stat. § 408.815(1)(a) .............................................................37, 38

Fla. Stat. § 409.9101 .........................................................................45

Fla. Stat. § 627 ..................................................................................41

Fla. Stat. § 627.732(4)(h)..................................................................41

Fla. Stat. § 627.736 ...........................................................................41

Fla. Stat. § 627.736(5)(b)(1)(b).........................................................41

Florida Health Care Clinic Act ..................................................*passim*

**Rules & Regulations**

Fed. R. Civ. P. 9(b) ..................................................................*passim*

Fed. R. Civ. P. 12(b)(1)..........................................................16, 17, 34

Fed. R. Civ. P. 12(b)(6)................................................................16, 17

Fed. R. Civ. P. 72..............................................................................51

Fed. R. Civ. P. 72(a)..................................................................*passim*

Fed. R. App. P. 26.1 ........................................................................C-1

11th Cir. R. 3-1 ......................................................................17, 21, 22

11th Cir. R. 26.1-1 ..........................................................................C-1

42 CFR § 411.23................................................................................44

42 CFR § 411.37................................................................................44

## JURISDICTIONAL STATEMENT

The district court properly exercised jurisdiction over this action under CAFA, 28 U.S.C. § 1332(d). Plaintiffs/Appellants John E. Ballew, by and through Judith A. Ballew ("Appellant Ballew"), the Estate of Roger J. Lapp, by and through Mark F. Lapp ("Appellant Lapp"), and the Estate of Shirley T. Cox, by and through Betty M. Smith ("Appellant Cox," and, with Appellant Ballew and Appellant Lapp, "Appellants") filed this action on January 5, 2018, in the Thirteenth Judicial Circuit, Hillsborough County, Florida. *See* DE-2 (App.I-49–101).[1] Defendant/Appellee Michael Bokor ("Bokor") timely removed the action to the United States District Court for the Middle District of Florida. DE-1 (App.I-17–48).

Each of CAFA's jurisdictional prerequisites are met: (1) the aggregate amount in controversy is $900 million, exceeding CAFA's $5 million threshold (*id.* ¶ 7 (App.I-4–5)); (2) minimal diversity exists among the parties because each Appellant is alleged to be a citizen of Florida while Defendant Marcus & Millichap, Incorporated ("MMI") is a citizen of Delaware and California (*id.* ¶¶ 10–11 (App.I-22)); and (3) the putative class allegedly comprises at least 3,000 persons, eclipsing CAFA's 100-class-member threshold (DE-82 ¶ 22 (App.III-98)). Although Appellants previously attempted to invoke CAFA's non-jurisdictional "local

---

[1] Citations to the Appendix or Supplemental Appendix are to the volume and specific pdf pages within that volume containing the cited material.

controversy" and "discretionary" exceptions, this Court rejected that attempt. *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1155–63 (11th Cir. 2021).

The district court also had federal question jurisdiction over Appellants' Racketeer Influenced and Corrupt Organizations Act ("RICO") claims (brought through 18 U.S.C. §§ 1961–1968) under 28 U.S.C. § 1331, and properly exercised supplemental jurisdiction over Appellants' state law claims under 28 U.S.C. § 1367.

Although Appellants cite 28 U.S.C. § 158(b) in their Jurisdictional Statement (Appellants' Opening Brief ("Br.") at 1), this Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The appeal is taken from a final judgment of the district court adopting the magistrate judge's report and recommendations (DE-158 (App.XII-205–10)) and dismissing the operative complaint (DE-159, 161 (App.XII-211–16)). On June 8, 2022, Appellants timely filed their notice of appeal. DE-162 (App.XII-217–30).

## STATEMENT OF THE ISSUES

1.    The district court adopted the magistrate judge's recommendation that Appellants' aiding and abetting a breach of fiduciary duty claim be dismissed because, among other things, Appellants failed to adequately allege the existence of an underlying fiduciary duty. In both their objections to the magistrate judge's report and in their opening brief here, Appellants address this issue with a single, general sentence: "prior Florida court rulings [] have allowed breach of fiduciary [sic] claims to proceed against skilled nursing facilities." By failing to pinpoint specific findings they disagreed with, did Appellants waive their challenge to the district court's dismissal of the aiding and abetting claim? Even setting aside waiver, did the district court correctly dismiss that claim because the Amended Complaint failed to allege that Appellants' skilled nursing facilities accepted the role of a fiduciary or otherwise had a "special relationship" with Appellants?

2.    The district court also adopted the magistrate judge's recommendation that Appellants' RICO claims be dismissed because, among other things, Appellants failed to allege a pattern of racketeering activity with the particularity required under Federal Rule of Civil Procedure 9(b). In both their objections to the magistrate judge's report and in their opening brief here, Appellants insist "they have alleged . . . two or more predicate acts," but do not elaborate or attempt to explain how the Amended Complaint's allegations comply with Rule 9(b). By including only a

1

vague, conclusory statement, did Appellants waive their right to challenge the district court's dismissal of their RICO claims? Even setting aside waiver, did the district court correctly dismiss Appellants' RICO claims because the Amended Complaint did not satisfy Rule 9(b)'s pleading requirements or because Appellants did not allege they suffered any injuries "by reason of" the alleged RICO violations?

3.      The heart of the Amended Complaint is Appellants' allegation that the nursing facilities where Appellants received care failed to identify the facilities' alleged "management companies" in their state licensure applications. Because of these purported omissions, Appellants say, the district court should retroactively void the facility licenses that the State admittedly issued, and, therefore, treat all services provided by the facilities as "noncompensable." Did the district court correctly adopt the magistrate judge's conclusion that Appellants had no standing to pursue claims arising from alleged license application omissions because: (1) the Amended Complaint does not allege that Florida's nursing facility regulator, the Agency for Health Care Administration ("AHCA"), would have found those omissions to be material and would not have issued the licenses had it known about them; and (2) applicable statutes and regulations do not provide for retroactively voiding an already-issued nursing facility license in these (or any other) circumstances?

4.     Even setting aside the foregoing issue, did the district court correctly adopt the magistrate judge's conclusion that Appellants do not have standing to sue for allegedly improper reimbursement claims submitted to Medicare and/or Medicaid because payments by a third party, governmental payer did not "result[] in personal injuries" to Appellants?

5.     The district court adopted the magistrate judge's recommendations that Appellants' claims be dismissed under the primary administrative jurisdiction and *Colorado River* abstention doctrines and that Appellant Lapp's claims be dismissed as *res judicata*. Have Appellants waived the right to challenge the district court's dismissal on these grounds by failing to offer any objection to the magistrate judge's recommendations below or to otherwise challenge the rulings in their opening brief here? Even setting aside waiver, did the district court correctly adopt the magistrate judge's thorough and unchallenged findings on these issues?

6.     Before the district court decided the motion to dismiss, Appellants moved for leave to file a second amended complaint. The magistrate judge denied that motion as futile and untimely, and Appellants did not timely object to that ruling under Federal Rule of Civil Procedure 72(a). Did the district court, when confronted with Appellants' six-month tardy objection, correctly affirm the magistrate judge's ruling denying the motion for leave, given that the proposed second amended complaint did not cure the deficiencies identified in Bokor's motion to dismiss and

only offered minor amendments that could have been raised in the Amended Complaint?

## **INTRODUCTION**

In this action, Appellants sought to recover nearly a billion dollars of payments made by or on behalf of a putative class of skilled nursing facility residents, including Appellants (or their decedents). Their theory: that the state-issued licenses for twenty-two separate skilled nursing facilities in Florida (together, the "Facilities") should be retroactively voided solely because, Appellants say, those Facilities failed to identify "management companies" in their license applications. So rendered retroactively "unlicensed," Appellants continue, every service those Facilities provided and billed for should therefore also be retroactively "unbillable."

Surprisingly, Appellants do not name as defendants the Facilities or their owners or license-holders who were paid for the alleged "unbillable" services. Instead, Appellants name Bokor, who purportedly owned the Facilities' "management companies," but who is not alleged to have provided or billed for the care provided to Appellants or anyone else.

As the district court correctly concluded, Appellants' claims unravel for a host of reasons. For one, Appellants' only two claims against Bokor—for aiding and abetting an alleged breach of fiduciary duty (Count II) and violations of the federal RICO statute (Count IV)—are insufficiently pleaded. Their aiding and abetting

4

claim fails because, among other things, Appellants did not adequately allege the existence of an underlying fiduciary duty—on the part of Bokor or the Facilities. Appellants' RICO claims fail because, among other things, Appellants did not sufficiently allege that (i) Bokor engaged in a pattern of racketeering activity or (ii) Appellants were injured by reason of any alleged RICO violation by Bokor.

The district court also dismissed Appellants' case for a more fundamental reason—Appellants' underlying theory that a nursing facility license can be retroactively voided for omissions in a license application fails as a matter of law. AHCA has exclusive jurisdiction over the licensing and regulation of nursing facilities. There is no statutory device through which AHCA (let alone anyone else) can declare licenses void *ab initio* (i.e., void from the outset). And although AHCA can *revoke* a license going forward for a material omission in a license application, Appellants failed to allege a basis for even prospective revocation, as the operative Amended Complaint does not allege at all, let alone plausibly, that AHCA would never have issued the licenses had it known about the management companies. Moreover, Appellants certainly do not have standing in this non-*qui tam* action to recover for payments made by Medicare or Medicaid.

In addition, the district court also correctly concluded that under the primary administrative jurisdiction doctrine, *AHCA* should decide whether to revoke the licenses *it* issued, not the judiciary. And because Appellants' counsel has been

5

litigating an avalanche of related state court cases on behalf of Appellants and members of the putative class, the district court also correctly concluded that the action is barred under the *Colorado River* abstention doctrine and that Appellant Lapp's claims are *res judicata*, as Appellant Lapp already lost those same claims against Bokor in state court.

This Court can affirm dismissal on several independent grounds. Procedurally, Appellants failed to preserve objections to most of the district court's conclusions by failing to specifically object to them below *or* in their opening brief, including: (1) that Appellants did not adequately allege their aiding and abetting fiduciary-breach and federal RICO claims; (2) that Appellants' claims are barred by the primary administrative jurisdiction and *Colorado River* abstention doctrines; and (3) that Appellant Lapp's claims are *res judicata*. Each of the foregoing unobjected-to grounds provides an independent and sufficient basis to affirm dismissal. That should end this appeal.

Substantively, all of the district court's independent bases for dismissal were correctly decided in any event, whether Appellants properly preserved an objection or not. For example, Appellants' principal objection is to the magistrate judge's conclusion, adopted by the district court, that Appellants cannot pursue claims based on the Facilities' alleged failures to identify their management companies in their license applications. In so doing, however, Appellants ignore the controlling

authority cited by Bokor and the district court—which forecloses Appellants' remedy—instead relying on cases applying an inapplicable statute, the Florida Health Care Clinic Act (the "Clinic Act"). But those cases are inapposite because the Clinic Act, unlike the statutes and regulations governing nursing facilities, expressly provides the remedy Appellants seek here—refunds from clinics that have violated the Clinic Act. There are no such remedies in the relevant nursing facility statutes. Appellants cannot rewrite the governing statutes by pointing to an irrelevant one that does not apply.

Perhaps recognizing the weakness of their positions below and on appeal, Appellants play up the district court's passing reference to Bokor as a "real estate broker" in its dismissal order. According to Appellants, this minor misdescription of Bokor's alleged role renders the entire order reversible. *Id.* Not so. The district court's misdescription has no bearing on the Court's consideration of the various grounds for dismissal that Appellants have not objected to. Plus, Appellants make a mountain out of a molehill. They cannot show that the district court's stray reference was anything more than immaterial and harmless. For example, the magistrate judge, whose report the district court adopted in full, properly credited Appellants' allegations as to Bokor's status and role. And even if the district court misperceived Bokor's alleged role (which the balance of the district court's order suggests it did not), Appellants fail to explain why that would have been material to the district

court's conclusions.  That is, Appellants fail to explain how Bokor's role is relevant, for example, to whether Appellants sufficiently pled a fiduciary relationship or actionable RICO predicate acts, or to whether Appellants can sue for moneys paid by Medicare or Medicaid, or to any of the other questions at issue in this appeal.

For these reasons, the Court should affirm the district court's dismissal of Appellants' claims against Bokor. The Court should also affirm the district court's denial of Appellants' motion for leave to file a second amended complaint. First, Appellants failed to preserve an objection to the magistrate judge's denial of that motion. Second, the proposed second amended complaint was untimely and would not have cured any of the foregoing defects in any event.

## STATEMENT OF THE CASE

### I.    Statement of Facts

According to the operative complaint (which is the Amended Complaint), the Appellants (or, for estate Appellants, their decedents[2]) received care at one of the Facilities. DE-82 ¶¶ 9, 11, 13 (App.III-195–96). Appellants allege that each Facility had an operational structure wherein one entity owned the land and buildings, a different entity held the operating license, and a third entity managed the Facility.[3]

---

[2] For ease of reference, for the estate Appellants, the term "Appellants" includes both the estate and the decedent.

[3] Notwithstanding Appellants' intimations, there is nothing nefarious about this operational structure. *See Schwartzberg v. Knobloch*, 98 So. 3d 173, 180–81 (Fla. 2d DCA 2012).

*Id*. ¶¶ 64, 66, 76–91 (App.III-213–20). Appellants allege that the landowning and license-holding entities for the Facilities shared common ownership, and that all Facilities were managed by the same "management companies": first, Southern SNF Management Inc. ("Southern SNF"), then, Reliant Health Care Services Inc. ("Reliant"). *Id*. ¶ 91 (App.III-220).

The crux of the Amended Complaint is Appellants' allegation that the Facilities submitted incomplete license applications to AHCA. *See id*. ¶¶ 84, 88, 92–94, 99 (App.III-217–24). Specifically, Appellants contend that the Facilities concealed from AHCA they were being managed by Southern SNF and/or Reliant, by claiming in their license applications that they were self-managed and had no "management companies." *Id*.

Appellants do not allege in the Amended Complaint that this omission was material to AHCA or that AHCA would not have issued the licenses had it known about Southern SNF and/or Reliant.[4] Nevertheless, Appellants contend that as a result of the alleged omissions, the district court should retroactively void the Facilities' licenses, *i.e.*, deem those license to be void *ab initio*, as if AHCA had never issued them at all. DE-82 ¶¶ 137, 146 (App.III-234–37). From there,

---

[4] Meanwhile, documents attached as exhibits to the Amended Complaint show that AHCA was aware of Reliant's existence and that Reliant was providing non-care related services to the Facilities. *See* DE-82-3 at 4–5 (App.IV-116–1) (email exchanges between Reliant and AHCA re: Citrus Health).

Appellants contend they were "injured" because "they" (more precisely, Medicare and/or Medicaid) paid for "unlicensed" nursing facility services. *Id*. ¶ 104 (App.III-225–26). Put differently, even though Appellants do not dispute they received skilled nursing facility services from the Facilities, they nevertheless seek to personally recover—from *Bokor*, not the Facilities—some hundreds of millions of dollars, mostly paid by Medicare and/or Medicaid, solely because Appellants believe the facility licensure applications omitted the Facilities' management companies.

Puzzlingly, Appellants did not name as defendants the Facilities themselves, any of the Facilities' owners or license-holding entities, or Reliant or Southern SNF. Instead, Appellants only sued (i) Bokor, a Florida citizen who allegedly owns Reliant and owned Southern SNF, and (ii) MMI, the parent company of several real estate and investment brokerage companies. Appellants alleged that Bokor submitted the allegedly incorrect licensing applications and otherwise participated in a "scheme" to conceal the identities of the alleged management companies from AHCA. DE-82 ¶¶ 88–112 (App.III-218–28). MMI was alleged to have attempted to broker the sale of certain facilities, despite "knowing" that the facilities were not properly licensed (*id*. ¶¶ 113–27 (App.III-228–32)). Appellants, however, voluntarily dismissed their claims against MMI with prejudice during the pendency of this appeal. 11th Cir. DE-11, 29.

Appellants seek to represent a putative class of other persons who received care at any of the twenty-two Facilities. *Id.* ¶ 21 (App.III-198). As Appellants allege, the putative class comprises more than 3,000 persons, and the alleged unlawful charges (whether paid directly or by a third-party payer like Medicare or Medicaid) exceed "nine hundred million dollars ($900,000,000)." *Id.* ¶¶ 2, 22 (App.III-193, 198). Appellants asserted two claims against Bokor: for aiding and abetting a fiduciary breach (Count II) and for violating the federal RICO statute, 18 U.S.C. § 1962 (Count IV). Appellants also asserted a civil conspiracy claim against MMI (Count V), but, in the operative complaint, not Bokor. *Id.*

## II.    The Course of Proceedings and Disposition Below

Appellants filed this action on January 5, 2018, in Florida state court. DE-2 (App.I-49–101). On February 14, 2018, Bokor timely removed the action to the United States District Court for the Middle District of Florida pursuant to CAFA. DE-1 (App.I-17–48).

Bokor then filed a motion to dismiss the complaint for lack of Article III standing and failure to state a claim. DE-13, 17 (Supp.App.-4–60). Bokor also argued the Court should either dismiss the case or refer it to AHCA under the primary administrative jurisdiction doctrine. DE-13 (Supp.App.-4–32). Appellants did not file responses to Bokor's motion. Instead, Appellants moved to remand this

11

action to Florida state court, citing CAFA's "local controversy" and "discretionary" exceptions.

On October 16, 2018, the district court granted Appellants' remand motion (DE-46 (Supp.App.-61–76)). On November 15, 2018, Bokor timely filed a notice of appeal of the district court's remand order. DE-49 (Supp.App.-77–80).

On March 12, 2021, this Court reversed the district court's remand order, concluding that Appellants failed to satisfy CAFA's local controversy or discretionary exceptions. DE-67 at 2–3 (App.I-111–12). Thereafter, Appellants sought leave to amend the complaint. DE-78 at 3–4 (Supp.App.-84–85). Bokor did not oppose that request but observed that, beyond swapping federal RICO for Florida RICO claims, the proposed Amended Complaint remained almost entirely the same. Because, according to Bokor, the Amended Complaint suffered from the same defects as the original complaint, Bokor reserved his right to move to dismiss the Amended Complaint. *See* DE-80 at 6–7 (App.I-155–56).

Appellants filed the Amended Complaint on May 18, 2021 (DE-81–82 (App.III-188–253)), and Bokor's motion to dismiss followed (DE-92 (App.VI-6–129)). Bokor's motion to dismiss the Amended Complaint echoed his motion to dismiss the nearly identical original complaint. Bokor argued, among other things, that: (1) Appellants lacked Article III standing because they did not even attempt to allege injuries from much of the purported misconduct alleged in the Amended

Complaint (*see id.* at 5–9 (App.VI-11–15)), and because Appellants' only theory of wrongdoing even conceivably connected to a purported injury-in-fact—that the Facility licenses should be retroactively voided because of license application omissions—was legally untenable, *see id.* at 9–11 (App.VI-15–17); (2) the Court should refer Appellants' licensure grievances to AHCA under the primary administrative jurisdiction and *Burford* abstention doctrines, *see id.* at 11–14 (App.VI-17–20); and (3) Appellants failed to adequately allege aiding and abetting breach of fiduciary duty and federal RICO claims, *see id.* at 14–25 (App.VI-20–31).

Bokor also made two new arguments, which flowed from Appellants' intervening conduct after filing the initial complaint. First, Bokor argued that Appellant Lapp's claims were *res judicata*, because those same claims had already been rejected in a full and final judgment in Florida state court. *Id.* at 26–35 (App.VI-32–41). Next, Bokor argued that the district court should stay the case under *Colorado River*, based on Appellants' counsel's pursuit of an "ocean of parallel, preexisting state court cases," filed by the same putative class members, against the same defendants (Bokor and his companies), alleging the same claims, about stays at the same facilities, and asserting the same factual and legal theories. *Id.* at 32–35. Bokor also moved to strike hundreds of pages of exhibits attached to the Amended Complaint. *See* DE-93 (Supp.App.-90–99).

Appellants' counsel requested three separate extensions to respond to Bokor's

13

motion, all of which Defendants agreed to, and all of which the Court granted. *See* DE-100, 103, 105 (Supp.App.-100–17). Nevertheless, at 4:22 p.m. on the day Appellants' responses were due, Appellants instead moved for leave to file a proposed second amended complaint, without first giving Bokor's counsel opportunity to review the proposed pleading. DE-109 (App.VI:130–VIII:170).

Bokor opposed Appellants' motion for leave to amend for several reasons. DE-116 (App.X:213–XI:50). First, Bokor argued the proposed amendments were largely superficial (beyond an attempt to reassert a conspiracy claim against Bokor that was brought in the initial complaint but abandoned in the Amended Complaint) and ignored most of Bokor's arguments for dismissal. Thus, Bokor contended that amendments were futile. *Id.* at 6–9 (App.X-219–22). In addition, Bokor asserted that any amendment was prejudicial and untimely, particularly Appellants' effort to reassert the belated, previously abandoned conspiracy claim. *Id*. at 10–13 (App.X-223–26).

The magistrate judge agreed with Bokor, denying Appellants' motion. DE-118 (App.XI-67–76). She observed that the proposed second amended complaint "d[id] not address the issues raised in the defendants' motions to dismiss or motion to strike," "ma[d]e[] only minor changes," and "would prejudice the defendants." *See* DE-118 at 6–7 (App.XI-73–74). Appellants did not submit a timely objection to that order. *See* Fed. R. Civ. P. 72(a) (14-day objection deadline); 28 U.S.C. §

636(b)(1)(C) (same).

The magistrate judge also ordered Appellants to respond to Bokor's long-pending motion to dismiss the Amended Complaint. DE-118 at 8 (App.XI-75). After briefing on the motion was complete, it was assigned to the magistrate judge for a report and recommendation. Following a two-hour hearing and post-argument submissions, the magistrate judge issued a 27-page report and recommendation (the "R&R"), recommending the district court grant the motion to dismiss in all respects. DE-137 (App.XI-159–86). The magistrate judge found five independent bases for dismissal: (1) lack of standing; (2) failure to state a claim; (3) the primary administrative jurisdiction doctrine; (4) *res judicata* (as to Appellant Lapp); and (5) *Colorado River* abstention. *See id*.

Following several more unopposed extensions of time, Appellants filed their objections to the R&R. *See* DE-146 (App.XII-23–74). By and large, Appellants took no issue with the magistrate judge's findings. Appellants principally focused on the magistrate judge's rejection of their "void *ab initio* license" theory, citing to a handful of cases under an inapplicable statute, the Florida Health Care Clinic Act, which has provisions authorizing the retroactive voiding of healthcare *clinic* charges, but does not apply to skilled nursing facilities. *Id*. at 8–22 (App.XII-31–45). Appellants also disagreed with the magistrate judge's conclusion that Appellants did not have standing to recover for alleged improper claims submitted to Medicare and

Medicaid (even though this is not a *qui tam* action), as well as her conclusion that Appellants failed to allege proximate causation for their RICO claims (*id*. at 22–28 (App.XII-45–51). And, nearly six months late, Appellants finally purported to object to the magistrate judge's denial of their motion for leave to file the second amended complaint (*id*. at 29–32 (App.XII-52–55)).

Otherwise, Appellants ignored the remainder of the magistrate judge's findings, including her findings that: (1) Appellants failed to adequately allege an underlying fiduciary duty; (2) Appellants failed to plead RICO predicate acts of racketeering activity with requisite specificity; (3) the primary administrative jurisdiction doctrine applied; (4) Appellants' claims were barred by the *Colorado River* doctrine; and (5) Appellant Lapp's claims were *res judicata*. *See id.* at 6–9 (App.XII-29–32).

After briefing completed, then another round of oral argument, and then another round of supplemental submissions, the district court affirmed and adopted the R&R in its entirety, dismissing Appellants' case for all of the reasons that the magistrate judge recommended dismissal. *See* DE-158, 159, 161 (App.XII-205–16). This appeal followed.

## III.  Standard of Review

Ordinarily, a district court's dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), for failure to state a claim under

Rule 12(b)(6), and on *res judicata* grounds would be subject to *de novo* review in this Court. *See Thacker v. Tenn. Valley Auth.*, 868 F.3d 979, 981 (11th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 1435 (2019) (Rule 12(b)(1)); *Ironworkers Local Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011) (Rule 12(b)(6)); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (*res judicata*). Meanwhile, this Court typically reviews dismissals under the primary administrative jurisdiction doctrine or on *Colorado River* abstention grounds for an abuse of discretion. *TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294 (11th Cir. 1998) (*Colorado River*); *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (primary administrative jurisdiction). A district court abuses its discretion if it makes an error of law or a clearly erroneous factual finding. *See Doctors Health, Inc. v. Aetna (In re Managed Care Litig.)*, 605 F.3d 1146, 1150 (11th Cir. 2010).

That said, where a party fails to properly and timely object to a magistrate judge's findings or recommendations in a report and recommendation, that party "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1. In those circumstances, the Court may review the unobjected-to findings and conclusions of the magistrate judge only "for plain error *if* necessary in the interests of justice." *Id.* (emphasis added); *see also Taylor v. Pekerol*, 760 F. App'x 647, 651 (11th Cir. 2019). In addition, the Court "may affirm the district court's ruling on any ground

supported by the record." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015).

## SUMMARY OF THE ARGUMENT

For the following independent reasons, the Court should affirm the district court's order granting Bokor's motion to dismiss the Amended Complaint and adopting the magistrate judge's denial of Appellants' motion for leave to file a second amended complaint.

*First*, Appellants waived their right to challenge the dismissal of their aiding and abetting breach of fiduciary duty claim. In their objections to the magistrate judge's R&R and again in their opening brief on appeal, Appellants failed to articulate why the magistrate judge wrongly concluded that Appellants failed to allege an underlying fiduciary duty. In any event, the magistrate judge and district court were correct. Appellants attempted to allege the existence of a fiduciary relationship based merely on a patient's admission to a skilled nursing facility. But Florida law requires more—either a "special relationship" or the purported fiduciary's affirmative acceptance of the role—none of which is alleged here.

*Second*, Appellants also waived their right to challenge the dismissal of their RICO claims. Here too, Appellants failed, in their objections to the magistrate judge's R&R and also in their opening brief, to specifically explain why the magistrate judge's conclusion that Appellants failed to allege a pattern of

racketeering activity with the requisite particularity was incorrect. And again, in any event, the magistrate judge and district court were undoubtedly correct. Appellants purport to allege mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 based on alleged false claims for reimbursement submitted by the Facilities to Medicaid and Medicare during periods when Appellants say the Facilities' licenses should be retroactively voided. But while mail and wire fraud must be pleaded with particularity under Federal Rule of Civil Procedure 9(b), the Amended Complaint does not contain any of the required Rule 9(b) specifics. Not only that, but Appellants also failed to allege how they were injured "by reason of" any predicate acts of racketeering, an essential element of their claim under § 1962(c), or Bokor's alleged maintenance or acquisition of an "interest in or control of" a RICO "enterprise," an essential element of their claim under § 1962(b). And because Appellants have not sufficiently alleged an underlying substantive RICO violation under § 1962(b) or (c), their RICO conspiracy claim under § 1962(d) also necessarily fails.

*Third*, and more generally, Appellants do not have standing to assert any of their claims because the fundamental predicate of the Amended Complaint—that the Facilities' alleged failure to disclose the existence and identities of their "management companies" to AHCA in and of itself injured Appellants—is wrong as a matter of law. That theory of injury turns on Appellants' contention that the

19

court should deem the Facilities' licenses to be void *ab initio* and should magically refund all moneys paid by or on behalf of Appellants for the care they actually received. But there is no statute, regulation, or other authority that supports the retroactive invalidation of a nursing facility license in *any* circumstance, let alone for omissions from a license application not even alleged to be material. In any event, Appellants certainly do not have standing in this non-*qui tam* action to recover moneys paid to the Facilities by Medicare and/or Medicaid under the circumstances alleged here.

*Fourth*, the Court should also affirm the district court's decision that the case be dismissed under the primary jurisdiction and *Colorado River* doctrines, and the claims of Appellant Lapp be dismissed as *res judicata*. Appellants have never objected to those rulings, whether here or below, and thus have waived the right to object to them now. What is more, the district court got those issues right on the merits.

*Finally*, the Court should affirm the district court's denial of Appellants' motion for leave to file a second amended complaint. Appellants failed to preserve an objection to that ruling by failing to challenge the magistrate judge's order within fourteen days. *See* Fed. R. Civ. P. 72(a). In addition, the order was undoubtedly correct, as the proposed second amended complaint was untimely and failed to cure

the deficiencies that formed the basis of the district court's dismissal of the Amended Complaint.

## ARGUMENT

### I.  The Court should affirm the district court's order dismissing the Amended Complaint.

The Court should affirm the district court's order dismissing the Amended Complaint for two separate, but equally sufficient, sets of reasons. First, the Court can affirm the district court under the several, independent grounds identified in the R&R that Appellants failed to object to below and in their opening brief. In other words, the Court can affirm the district court without even addressing Appellants' arguments. Second, even if the Court digs into Appellants' claimed errors, the Court should affirm because the district court got those issues right.

#### A.  Appellants waived the right to challenge most of the district courts' grounds for dismissal and the conceded grounds provide an adequate basis to affirm.

Appellants have waived their right to challenge most of the district court's independent reasons for dismissing their case, the Court should affirm the dismissal for that reason alone. Eleventh Circuit Rule 3-1 provides: "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation . . . waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1.

Appellants were "informed of the period for objecting and the consequences on appeal for failing to object" to the R&R, as contemplated by Eleventh Circuit Rule 3-1. *See* DE-137 at 27 (quoting 11th Cir. R. 3-1) (App.XI-186). Indeed, Appellants did object, but only to narrow pieces of the R&R. *See generally* DE-146 (App.XII-23–74). In doing so, however, Appellants did not object to most of the magistrate judge's findings and conclusions. *See* DE-154 at 6–9 (App.XII-102–05). And after reviewing the full stack of briefing (the motions to dismiss, the response to the motions to dismiss, the R&R, the objections to the R&R, the supplemental case law, and the response to the R&R), inviting supplemental briefing, and hearing two hours of oral argument, the district court adopted the R&R in whole. *See generally* DE-158 (App.XII-205–10).

Those "unobjected-to factual and legal conclusions" are independently sufficient to affirm the district court. 11th Cir. R. 3-1. By failing to object to them, Appellants have conceded that they cannot state a claim for aiding and abetting a breach of fiduciary duty, that they cannot state a RICO claim, that the primary administrative jurisdiction doctrine applies, that their claims fail under *Colorado River*, and that Appellant Lapp's claims are *res judicata*.

### 1.    Appellants waived their right to challenge the dismissal of their claim for aiding and abetting a breach of fiduciary duty.

At top, Appellants waived their right to challenge the district court's finding that Appellants did not plausibly state a claim for aiding and abetting a breach of

fiduciary duty. Not only that, but any objection to the district court's dismissal of that claim fails on the merits anyway.

As the magistrate judge observed, Appellants' claim for aiding and abetting a breach of a fiduciary duty requires the existence of an underlying fiduciary duty. *See* DE-137-11–12 (App.XI-170–71) (citing *S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010)). A fiduciary duty is the duty "to act for someone else's benefit, while subordinating one's personal interest to that of the other person." *Reimsnyder v. SouthTrust Bank, N.A.*, 2001 WL 36207301, ¶ 35 (Fla. Cir. Ct. Nov. 16, 2001). Because fiduciary duties are "the highest standard of duty implied by [Florida] law," (DE-137 at 12 (App.XI-171) (quoting *Reimsnyder*, 2001 WL 36207301), "there must be substantial evidence showing" *not only* "some dependency by one party[,]" *but also* "some undertaking by the other party to advise, counsel, and protect the weaker party." *Muniz v. GCA Servs. Grp., Inc.*, 2006 WL 2130735, at *10 (M.D. Fla. July 28, 2006). "[T]he fact that one party places trust or confidence in the other does not create a confidential relationship in the absence of some recognition, acceptance or undertaking of the duties of a fiduciary on the part of the other party." *Id.* at *10.

Against that backdrop, the magistrate judge found that Appellants failed to allege an actionable fiduciary duty. DE-137 at 11–12 (App.XI-170–71). Appellants alleged the existence of a fiduciary relationship based on their mere "admission into

[their] nursing home," without more, which the magistrate judge correctly found was insufficient under Florida law. *Id.* at 12, n.9 (App.XI-171) (citing *Est. of Joellen Brainerd v. Bokor*, No. 2018-CA-000204 (Fla. Cir. Ct. Sept. 18, 2018) (holding that because "there are no facts supporting the creation of a duty outside the generic admission into a nursing home, Plaintiff has not sufficiently alleged a fiduciary duty")).

Yet when presented with the opportunity to substantively object to that finding, Appellants passed. Instead, they offered a single sentence, buried in their brief, observing that "prior Florida court rulings [] have allowed breach of fiduciary [sic] claims to proceed against skilled nursing facilities." DE-146 at 25 (App.XII-48). Over this conclusory observation, the district court adopted the R&R, dismissing Appellants' aiding and abetting claim. *See* DE-158 at 3–5 (App.XII-208–10). On appeal, Appellants have essentially abandoned the issue, copying-and-pasting the same lone, uninformative sentence into their opening brief. Br. at 31–32.

With all of that in mind, the Court can affirm dismissal of Appellants' aiding and abetting claim on two grounds.

*First*, Appellants did not preserve an objection. Under Eleventh Circuit law, "a party that wishes to preserve its objection[s]" to an R&R "must clearly advise the district court and pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009)). By extension, "[f]rivolous,

24

conclusive, or general objections need not be considered." *Id.* at 1361. Yet Appellants' one sentence mention of fiduciary duties found in different, unnamed circumstances by "other courts" is just that—conclusive and general. *See McCullars v. SSA*, 825 F. App'x 685, 694 (11th Cir. 2020) (holding that "conclusory objections, relying on long block quotes unaccompanied by legal analysis" are "insufficient to mandate *de novo* review" of objections). Although Appellants refer to two Florida state court decisions that apparently allowed breach of fiduciary duty claims against nursing facilities to proceed beyond the pleading stage, Appellants fail to identify what those other courts found, how those cases compare to this one, or what the magistrate judge here got wrong. And Appellants' identical "argument" on appeal fares no better. *See Fernau v. Enchante Beauty Prods.*, 847 F. App'x 612, 620 (11th Cir. 2021) appellant "abandoned [an] issue" by "not challenging the magistrate's finding, which was adopted by the district court, in their opening brief on appeal"); *accord Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("[w]hen an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed"). By failing to properly object to the magistrate judge's finding that Appellants did not adequately allege the existence of an underlying fiduciary duty, Appellants waived any challenge to the dismissal of their aiding and abetting claim. *See*

*McCullars*, 825 F. App'x at 694 ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

*Second*, Appellants' conclusory objection fails in substance. For one, Appellants' naked authority—two cases cited without explanation—gets them nowhere. *See* Br. at 31–32. One citation is to *Mongiovi v. Vencor*, Case No. 98-769 (M.D. Fla. Apr. 16, 1999), an unpublished, decades-old district court order denying a motion to dismiss. DE-146 at 25 (App.XII-48). But *Mongiovi*, decided under the more permissive pre-*Twombly/Iqbal* pleading standard, does not support Appellants' attempt to allege the existence of a fiduciary relationship based solely on a patient's admission to a skilled nursing facility.

On the contrary, the *Mongiovi* defendants did not even challenge whether the plaintiffs had adequately alleged the existence of a fiduciary duty. Instead, they contended that, as a matter of Florida law, breach of fiduciary duty claims were "foreclosed between parties to a contract." DE-146-1 at 9 (App.XII-66). What is more, the plaintiff in *Mongiovi* "properly alleged a fiduciary duty between" the defendant nursing facility "and its residents," by pointing to "a special relationship" and "affirmative acts by the Defendants" that were "independent of the contract." *Id.* at 10 (App.XII-67). Here, by contrast, Appellants contend that a patient's mere admission into a nursing facility, without any "special relationship" or other

"affirmative acts," is sufficient to create a fiduciary duty. DE-82 ¶¶ 142–43 (App.III-235–36); *see also id*. ¶ 142 (App.III-235) (alleging the bare conclusion that "the licensees of the Facilities owed expressed and implied fiduciary duties"). *Mongiovi* does not so hold.

Appellants' other bare authority, *Greenfield v. Manor Care*, 705 So. 2d 926 (Fla. 4th DCA 1997), *receded from by Beverly Enter. v. Knowles*, 766 So. 2d 926 (Fla. 4th DCA 2000)), was relied on by the *Mongiovi* court. But like *Mongiovi¸ Greenfield* does not help Appellants. In *Greenfield*, the defendant did not challenge whether the plaintiff had adequately alleged facts creating a fiduciary duty, but instead contended that a breach of fiduciary duty claim can never lie between parties to a contract. *Id*. at 931–32 (contending that the "economic loss rule" barred breach of fiduciary duty claims between parties to a contract). In any event, the factual allegations in *Greenfield* supporting the existence of a fiduciary duty were different than those in the Amended Complaint. Just like in *Mongiovi*, the plaintiffs in *Greenfield* did not rely on their mere admittance into the nursing facility to establish a fiduciary relationship, but instead alleged that a "special relationship" had developed between them and the defendants actually sued. *Id*. at 932. There are no such allegations here.

In the same vein, Appellants' citation to various federal and Florida nursing facility statutes (*see* Br. at 32) is unavailing. For starters, Appellants do not argue

that those statutes create a fiduciary duty—because they do not. *See id*. If anything, those laws do the reverse. Take section 400.022, Florida Statutes, adopted *after Greenfield*, and which enumerates "residents' rights" at skilled nursing facilities. Fla. Stat. § 400.022. That statute describes nursing facility residents' rights and facilities' duties, yet includes no "fiduciary" duties. *Id.* Thus, far from creating a fiduciary duty, Florida law does the opposite—it "unequivocally [dis]places [any] fiduciary duty owed . . . at common law with a more narrowly defined set of statutory duties." *Burchfield v. Realty Exec.* 971 So. 2d 138, 139 (Fla. 5th DCA 2007); *accord McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1193–94 (11th Cir. 1991) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should expand the coverage of the statute to subsume other remedies."). At bottom, Appellants' hypothesized nursing facility fiduciary duty finds no support in Florida law.

Whether through waiver or on the merits, the Court should affirm dismissal of Appellants' aiding and abetting a breach of fiduciary duty claim against Bokor.

## 2. Appellants waived their right to challenge the dismissal of their RICO claims.

For the same two broad reasons—that Appellants have twice waived their objections and that their objections fail in substance—the Court should affirm dismissal of Appellants' only other claims against Bokor, for violating the federal RICO statute.

All of Appellants' RICO claims require, among other things, that Appellants plead a pattern of racketeering activity, i.e., a pattern of criminal "predicate acts." *See* DE-137 at 15 (App.XI-174) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004)).[5] Section 1961(1) contains the exhaustive list of criminal offenses that constitute "predicate acts" of racketeering activity. *Id.* (citing § 1961(1)). For predicate acts sounding in fraud (like alleged violations of the federal mail and wire fraud statutes), the "alleged predicate actions must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b), which requires the plaintiff to state with particularity the circumstances constituting fraud." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020); *see also* DE-137 at 15–16 (App.XI-174–75). "Thus, to survive a motion to dismiss," a plaintiff must plead "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiff; and (4) what defendants gained by the alleged fraud." *Cisneros*, 972 F.3d at 1216; *see also* DE-137 at 16

---

[5] Appellants assert substantive RICO violations under § 1962(b) and (c), as well as a RICO conspiracy claim under subsection (d). Section 1962(b) prohibits the use of "a pattern of racketeering activity … to acquire or maintain … any interest in or control of" a RICO enterprise. Section 1962(c) bars the conducting of a RICO enterprise through "a pattern of racketeering activity." Section 1962(d), the conspiracy provision, depends upon a substantive violation under subsections (a), (b), or (c), which Appellants do not dispute.

29

(App.XI-175) (quoting *Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

Applying these principles, the magistrate judge concluded that Appellants' predicate act allegations failed for two reasons. *See* DE-137 at 15–16 (App.XI-174–75). First, one of the statutes that Appellants invoked, 18 U.S.C. § 1035 (false statements relating to health care matters), falls outside of § 1961(1)—the statutory predicate act list. *Id.* at 15 (App.XI-174). Second, the other purported predicate act allegations of mail and wire fraud (DE-82 ¶ 166(f)–(g) (App.III-242–44) (citing 18 U.S.C. §§ 1341, 1343), were "simply 'a formulaic recitation' of the elements of the offense," which violated "the requisite pleading requirements of [Rule] 9(b)." *Id.* at 16 (quoting *Twombly* and *Iqbal*).

Appellants declined to make a specific objection to these findings. Instead, Appellants insisted—in a single conclusory sentence—that "they have alleged . . . two or more predicate acts." DE-146 at 26 (App.XII-49). Here too, the district court reviewed Appellants' "objection" and adopted the magistrate judge's findings, dismissing the RICO claims. *See* DE-158 at 3–5 (App.XII-208–10). On appeal, Appellants have all but abandoned this issue too, again copying the same solitary sentence into their opening brief. Br. at 32–33.

With that background, the Court should affirm dismissal of Appellants' RICO claim for the same two reasons: waiver and merits.

*First*, as with the aiding and abetting claim, Appellants waived any objection to the magistrate judge's RICO predicate act analysis. Like before, Appellants' conclusory, "because we said so" assertion that they adequately alleged a pattern of predicate acts is precisely the sort of "frivolous, conclusive, [and] general objection" which "need not be considered." *Schultz*, 565 F.3d at 1361. Also as before, Appellants have effectively "abandoned the issue in this Court" by not substantively "challenging the magistrate's finding . . . in their opening brief on appeal." *Fernau*, 847 F. App'x at 620. In short, because Appellants waived the issue below and abandoned it here, "it follows that the judgment is due to be affirmed." *Id.*

*Second*, the magistrate judge and district court were right—Appellants' predicate act pleading fails. In their opening brief, Appellants concede that § 1035 is not "named as a statutory act" (Br. at 26), which leaves the alleged violations of the mail and wire fraud statutes (§ 1341 and § 1343) as the only potential predicate acts supporting Appellants' RICO claims.

But Appellants' mail and wire fraud allegations are also inadequate because they contain none of the required Rule 9(b) details. Indeed, besides alleging that Bokor signed a document related to a facility that none of the Appellants resided at, the Amended Complaint lacks *any* specific predicate act allegations about Bokor. Put another way, Appellants did not allege "precisely what statements" Bokor made, "the time and place of each such statement," the particular "contents of such

statements and how they misled the [appellants]," or what Bokor (who was not alleged to have owned the facilities or received even a cent from Appellants) "obtained as a consequence." *Brooks*, 116 F.3d at 1371.

In sum, because Appellants "failed to object to the magistrate's finding that they had not pleaded an essential element of the[ir] [RICO] claim[s]"—and did not, in fact, sufficiently plead that element—"the judgment is due to be affirmed." *Fernau*, 847 F. App'x at 620.

### 3. Appellants waived their right to challenge the district court's dismissal under the primary administrative jurisdiction doctrine.

The Court can also affirm dismissal of Appellants' claims under the primary administrative jurisdiction doctrine. In the R&R, the magistrate judge recognized that Appellants' case turns on a theory of "improper licensing of skilled nursing facilities." DE-137 at 19–20 (App.XI-178–79). Yet Florida law charges AHCA—not the judiciary—with primary authority over "administering, interpreting, and enforcing the laws and rules regulating nursing facilities." *Id.* at 19 (citing Fla. Stat. § 400.23(2)). Licensing issues, too, including addressing "alleged violations of the application process," lie firmly within AHCA's legislative charge. *Id.* (citing Fla. Stat. § 400.121(1)). As Appellants now put it (but did not allege in the Amended Complaint), their case hinges on the idea that "had AHCA been aware of the true

party seeking licensure, the license would not have been granted." DE-121 at 15 (Supp.App.-133).

For these reasons, the magistrate judge recommended—and the district court agreed—that Appellants' claims "should be addressed by AHCA, not th[e] court" through the primary administrative jurisdiction doctrine. DE-137 at 19–20 (App.XI-178–79); DE-158 at 4–5 (App.XII-209–10). Under the primary administrative jurisdiction doctrine, which is "concerned with protecting the administrative process from judicial interference," courts defer to agencies on issues which "have been placed within the specific competence of an administrative body." *Id.* at 20 n.9 (quoting *Boyes*, 199 F.3d at 1265) and *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956))). Appellants did not object to this analysis. *See generally* DE-146 (App.XII-23–74). Nor do they challenge it on appeal. Therefore, the Court should affirm the district court's judgment.

### 4.    Appellants waived their right to challenge the district court's dismissal pursuant to the *Colorado River* doctrine.

The Court can also affirm the district court's dismissal under the *Colorado River* doctrine. As the magistrate judge explained, Appellants and their counsel have "filed close to thirty similar cases against Mr. Bokor and his companies [across] Florida." DE-137 at 20 (App.XI-179). Over four pages of detailed analysis, the magistrate judge applied *Colorado River*, finding that the wave of related state court litigation filed by Appellants' counsel, for Appellants or members of the putative

class alleged in this case, "involve[d] substantially the same parties and substantially the same issues." *Id.* at 22–25 (App.XI-181–84) (applying the *Colorado River* factors). Indeed, those cases involve the same parties, counsel, claims, and allegations—and most are much further along. *Id.* In fact, one case has already been finally decided against Appellant Lapp. Appellants failed to object to the magistrate judge's *Colorado River* analysis, which the district court adopted.[6] *See generally* DE-146 (App.XII-23–74); DE-158 at 4–5 (App.XII-209–10). On appeal, too, Appellants have abandoned the issue. Thus, if the Court does not affirm the district court for the foregoing reasons, it should affirm the judgment under *Colorado River*.

### 5.    Appellant Lapp waived its right to challenge the district court's conclusion that its claims are *res judicata*.

Finally, the Court should affirm dismissal of Appellant Lapp's claims as *res judicata*. As the magistrate judge recognized, opposing counsel filed an almost indistinguishable state court case for Appellant Lapp against Bokor's alleged management company, Reliant. DE-137 at 20 (App.XI-179). Like this case, that one featured the same parties (or their privies), legal theories, allegations, and causes of

---

[6] Appellants vaguely objected to "the mischaracterization of other lawsuits which [they] may have filed in state courts in Florida." DE-146 at 29 (App.XII-52). That complaint went to Bokor's reliance on certain orders dismissing those cases as persuasive precedent justifying dismissal of this case under Rules 12(b)(1) or 12(b)(6), not the *Colorado River* doctrine. Because Appellants' vague objection fails to "clearly advise the district court and pinpoint the specific findings that the party disagrees with," it is of no moment. *Schultz*, 565 F.3d at 1360.

action. *See id*. at 21–22 (App.XI-180–81). The Florida circuit court dismissed Appellant Lapp's claims with prejudice, which was affirmed on appeal. *Id.* at 20 (App.XI-179). Thus, as the magistrate judge and district court found when applying Florida's "four identities" of *res judicata*, Appellant Lapp's claims are precluded. *Id.* at 20–22 (App.XI-179–81) (quoting *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004)); *see also id.* (quoting *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985) (explaining that "the state law of *res judicata* applies")). Appellant Lapp conceded that conclusion below by failing to object to it then, *see generally* DE-146 (App.XII-23–74), and continues to concede it here by failing to object to it now. Therefore, the Court should affirm the district court's conclusion that Appellant Lapp's claims are *res judicata*.

### B.    Appellants' properly preserved objections provide no basis for overruling the district court's order.

Although this Court could affirm the district court's order dismissing the Amended Complaint on any of the sufficient and independent grounds just discussed that Appellants did not challenge below or in this appeal (*see supra* § I(A)), the grounds for dismissal actually challenged by Appellants, even viewed in isolation, do not warrant reversal. Appellants' only properly preserved objections include: (1) whether Appellants have standing to pursue a claim based on alleged incorrect or false information in a license application or renewal for a skilled nursing facility; (2) whether Appellants can recover for allegedly improper claims submitted to Medicare

and/or Medicaid; (3) whether Appellants adequately alleged that they were injured by reason of a purported RICO violation; and (4) whether the district court committed reversible error by referring to Bokor in passing as a "real estate broker." Each of these objections is without merit; none provide a basis to reverse the district court.

### 1.    The district court correctly concluded that Appellants cannot pursue a claim based on alleged misstatements in a nursing facility license application.

The lone theory of wrongdoing that Appellants contend caused them harm is their contention that the Facility license applications failed to identify each Facility's "management company."[7] DE-82 ¶¶ 91–99 (App.III-220–24). Appellants argue the Facility licenses are "void" *ab initio* solely because of these purported omissions, and then jump to the conclusion that, as a result, the facilities "had no legal right whatsoever to collect payments from residents, including [Appellants], or reimbursements from Medicare and Medicaid." *Id*. ¶¶ 103–04 (App.III-225–26).

---

[7] Appellants' arguments are ever-evolving, as Appellants also now contend—as raised for the first time in their objections to the R&R (DE-146 at 3 (App.XII-26))—that the Facilities' licenses were unlawfully obtained because the Facilities also failed to identify their "controlling interests." Br. at 14. This theory of wrongdoing was not alleged in the Amended Complaint (DE-82 ((App.III-191–253)) or argued to the magistrate judge (DE-146 ((App.XII-23–74)). Thus, Appellants waived this argument. But even if the Court considers the argument, it gets Appellants nowhere. Much like their other barebones allegations, the Amended Complaint lacked allegations about who held these purported "controlling interests," how that control was exercised, or, most importantly, whether AHCA would not have issued licenses but for those alleged omissions.

These purported improperly collected "payments from residents" or "reimbursements from Medicare and Medicaid" form the "injuries" that undergird all of Appellants' claims.

Even accepting the allegation that the Facilities improperly failed to identify their management companies as true, as both the magistrate judge and the district court did (*see* DE-137 at 8 n.4 (App.XI-167); DE-158 at 3–4 (App.XII-209–10)), Appellants' daisy-chain theory of injury fails as a matter of law. Most significantly, Appellants do not allege that AHCA, charged by the Florida legislature with *exclusive* jurisdiction over the nursing facility licensing process, *see* Fla. Stat. §§ 408.806, 408.812(2), 408.815(1)(a), would not have issued licenses had it known that Southern SNF and/or Reliant were purportedly managing the Facilities. For good reason: Appellants' own exhibits—attached to the Amended Complaint — show that AHCA knew about Reliant and the role it played with certain Facilities. *See* DE-82-3 at 4–5 (App.IV-116–17) (email exchanges between Reliant and AHCA re: Citrus Health). Although for the first time on appeal, Appellants argue AHCA would not have issued licenses to the Facilities had AHCA known about the purported management companies (Br. at 13–17), this Court should not consider that argument because Appellants failed to allege as much in their Amended Complaint. *Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1216 (11th Cir. 2012) (declining to consider claims not detailed in the plaintiff's pleadings). So,

Appellants' leap from purported omissions in license applications to licenses being deemed void *ab initio*—an essential predicate to Appellants' claim that they (or Medicare and Medicaid) were injured by paying for unlicensed, unbillable services—is completely unfounded.

Not only that, but the statutes governing nursing facility licensure do not even allow for a facility license to be retroactively voided. Those statutes provide AHCA the authority to prospectively *revoke* a facility license in certain enumerated circumstances, including material omissions or misstatements in a licensure application. *See* Fla. Stat. § 408.815(1)(a). But revocation of a license (i.e., removing licensure privileges going forward) is far different from declaring that license to be void from the outset (i.e., treating it as if it never existed). And as is turns out, there is no statutory basis for AHCA—let alone anyone else—to retroactively void nursing facility licenses. On the contrary, Appellants' invented remedy is noticeably absent from the statutes. *See* Fla. Stat. § 400.121(1) (defining administrative penalties for nursing facility violations); *see also McKinnon*, 935 F.2d at 1193–94 (internal quotation marks omitted) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.").

38

Running from these legal principles, Appellants rely on a line of cases involving auto insurers and a different statute: the Clinic Act. *See* Br. at 17–22.[8] But for the reasons explained below, these Clinic Act cases are inapposite.

*First*, Appellants' reliance on the Clinic Act cases fails on its face because the Clinic Act is different than Florida's nursing facility statutes. Specifically, the Clinic Act expressly provides:

> A charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is *noncompensable and unenforceable*.

Fla. Stat. § 400.9935(3) (emphasis added). This language, providing that any charge by a healthcare clinic operating in violation of any provision of the Clinic Act is "unlawful," "noncompensable," and "unenforceable," undergirds all of Appellants' Clinic Act cases. *See, e.g.*, *First Care Sol., Inc.*, 232 F. Supp. 3d at 1266 (emphasis added) (quoting Fla. Stat. § 400.9935(3) ("[T]he [Clinic Act] mandates that 'all charges or reimbursement claims made by … a clinic that is required to be licensed

---

[8] Appellants cite the following four cases: (1) *State Farm Mut. Auto. Ins. Co. v. First Care Sol., Inc.*, 232 F. Supp. 3d 1257, 1266 (S.D. Fla. 2017) (Br. at 17); (2) *State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1163 (S.D. Fla. 2015) (*id.* at 20); (3) *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 583 (11th Cir. 2013) (*id.* at 20); and (4) *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. Of Fla.*, 2014 WL 11910630, at *1 (S.D. Fla. Sept. 15, 2014) (*id.* at 26).

*under this part*, but that is not so licensed … are unlawful charges, and therefore are noncompensable and unenforceable.'")). Indeed, this Court focused on the same language in finding that the *Clinic Act* created a judicial remedy for *Clinic Act* violations. *See Silver Star Health & Rehab*, 739 F.3d at 583 ("[T]he plain language of [the Clinic Act] plainly says that a charge or reimbursement claim by an unlicensed clinic … is 'unlawful.'") (quoting Fla. Stat. § 400.9935(3)).

The Clinic Act shows that the Florida Legislature knows how to provide that remedy when they want to. But there is nothing comparable in Florida's nursing facility licensure statutes. That is, there is no language in the nursing facility statutes that would treat charges by nursing facilities operating in alleged violation of the statutes as "unlawful," "noncompensable," and "unenforceable." Not only that, but unlike the Clinic Act, which allows private plaintiffs to bring actions to recover charges paid to a clinic based on *any* violation of the Clinic Act, under the nursing facility statutes, only "[t]he agency," i.e., AHCA, "or a[] state attorney may … bring an action for an injunction to restrain [a] violation, or to enjoin the future operation or maintenance of an unlicensed provider." Fla. Stat. § 408.812(2). Put differently, unlike the Clinic Act, nothing in the statutes controlling this case contemplates allowing a nursing facility patient to recover charges paid to a facility based on that facility's violation of the statutes, including violations of the licensure provisions. In addition, even AHCA cannot do what Appellants seek here—declare facility

licenses retroactively void. *Id.*; *see also supra* at 37–38. In each of these critical ways, Florida's nursing licensure statutes are dispositively unlike the Clinic Act.

*Second*, the Clinic Act cases' reliance on chapter 627, Florida Statutes, Florida's automobile insurance no-fault statutory scheme, is another reason those cases are inapposite. *See* Br. at 19–20 (citing *B&A Diagnostic, Inc.*, 145 F. Supp 3d at 1163); *see also Silver Star Health & Rehab*, 739 F.3d at 583 (referencing section 627.736, Florida Statutes, in interpreting the Clinic Act); *First Care*, 232 F. Supp 3d at 1266 (same). Like the Clinic Act, chapter 627 authorizes an insurer to sue on behalf of its insureds if certain conditions precedent are satisfied. *See generally* Fla. Stat. § 627.732(4)(h). Additionally, the No-Fault Law provides: "An insurer . . . is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered." Fla. Stat. § 627.736(5)(b)(1)(b) (emphasis added). The nursing facility licensure statutes, by contrast, lack similar provisions. Thus, much like the Clinic Act, Florida's No-Fault Law is irrelevant to this case.

*Third*, each Clinic Act case involved a direct injury to the plaintiff itself. For example, in *First Care*, the plaintiff automobile insurance company had directly paid the defendant healthcare clinic for services. *See First Care*, 232 F. Supp. 3d at 1265–66; Br. at 18. The same is true of the plaintiff automobile insurance company in *Silver Star Health & Rehab*. *See Silver Star Health & Rehab*, 739 F.3d at 582; Br. at 20. Here, by contrast, the alleged injury is far more attenuated: either Florida (via

41

Medicaid) or the federal government (via Medicare) paid *nonparty* licensees. See DE-82 ¶¶ 54–56 (App.III-209). These two additional degrees of separation sever any standing. Simply put, *Appellants* have no standing to sue alleged management company owner *Bokor* for payments the *government* made to *nonparty nursing facilities*. *See also infra* at § I(B)(2).

This underscores a *fourth* distinguishing factor of the Clinic Act cases—the Clinic Act plaintiffs suffered far more certain injuries. Consider *Medical Service Center*. *See* Br. at 26. There, plaintiff State Farm was suing for insurance payments "in excess of $901,000" that it had *already* paid out to the defendants. *Med. Serv. Ctr.*, 2014 WL 11910630, at *1. Appellants' allegations—that Bokor and nonparty facility license-holders "may **one day** limit their '**potential** liability … to **future** creditors, including Plaintiffs and the Class members"—stand in sharp contrast. *See* DE-82 ¶ 85 (App.III-217–18) (emphasis added).

*Fifth*, unlike plaintiffs in the Clinic Act cases, Appellants here did not allege facts that would justify even *prospective revocation* of the licenses, let alone retroactively writing the licenses out of existence. As explained above, the Amended Complaint does not allege that AHCA would not have issued the licenses had it known the Facilities did not disclose the existence of their purported "management companies." *See supra* at 37–38. By contrast, in the *Medical Service Center* case, for example, the plaintiff alleged that the defendants made a series of egregious

42

misrepresentations to AHCA that were material to the defendant clinic's licensure status. First, defendants improperly operated the clinic without a license by falsely telling AHCA that the clinic was physician-owned, when it wasn't. *Med. Serv. Ctr.*, 2014 WL 11910630, at *2. Then, defendants improperly obtained a license by false representing to AHCA that the purported physician owner had conveyed his ownership interests to defendants, when, in reality, that physician never had any ownership interest to begin with. *Id*. In light of these material misrepresentations, AHCA provided a sworn declaration that it never would have issued the licenses had it known the truth. *See State Farm Mut. Auto Ins. Co. v. Med. Serv. Ctr. of Fla.*, 103 F. Supp. 3d 1343, 1348 n.6 (S.D. Fla. 2015). But there are no such allegations or evidence here.

*Finally*, there are independent reasons the district court's decision makes good sense. For one, because the nursing facility statutes "expressly provide[] a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies"—including giving private plaintiffs the right to retroactively write the licenses out of existence. *McKinnon.*, 935 F.2d at 1193–94. Further, the practical effect of the relief sought—retroactive invalidation of some twenty-two nursing facility licenses statewide, in an action where the licensees have not even been named as parties—counsels against reading Appellants' remedy into the statute.

43

For all these reasons, the district court correctly concluded that Appellants could not seek the reimbursement of fees paid (whether by themselves or on their behalf) for nursing facility services based on the allegation that there was incorrect or incomplete information in the facility license applications. This Court should do the same.

>    2.    **The district court correctly concluded that Appellants do not have standing to personally recover for alleged improper claim submitted to Medicare and/or Medicaid.**

Even setting aside whether Appellants had standing to bring *any* claims against Bokor based on their license application-omission theory of wrongdoing, the district court also correctly concluded that Appellants do not have standing to personally recover from Bokor in this non-*qui tam*, direct action for alleged improper reimbursement claims submitted by the Facilities to Medicare or Medicaid.

It is beyond dispute that there is no private right of action for alleged injuries to Medicare or Medicaid. *Estate of Ayres v. Beaver*, 48 F. Supp. 2d 1335, 1339–40 (M.D. Fla. 1999). Appellants attempt to circumvent this roadblock by noting that in certain circumstances Medicare payments can be "conditional," while Medicaid regulations permit the State of Florida to seek "reimbursement" of Medicaid payments from probate estates in certain circumstances. Br. at 28–30. Conceivably, then, in some unpled circumstances yet to occur, Appellants *could*, at some unknown point in the future, be forced to pay Medicare or Medicaid back for amounts paid to

the Facilities for reasons having nothing to do with the license applications. *Id.* at 28–30 (citing 42 CFR §§ 411.23 & 411.37).

But Appellants' *ipse dixit* description of how the complicated Medicare and Medicaid reimbursement programs supposedly work (which is almost completely bereft of citation to authority) misconstrues the regulations at issue. For one, Appellants ignore the fact that estates are only asked to reimburse Medicaid under specific conditions, none of which are pleaded here. *See* section 409.9101, Florida Statutes. In addition, Appellants mischaracterize Medicare payments as "debts" incurred by the Medicare beneficiary that the beneficiary is expected to pay back. Br. at 28. In reality, Medicare makes conditional payments *only* when it is a "secondary" payer and a "primary" payer has not made a timely payment. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1306–07 (11th Cir. 2006). In that circumstance, the Medicare conditional payment rules say that Medicare will be entitled to reimbursement from the beneficiary if and to the extent the beneficiary receives payment from the "primary" payer, such as a damages award in litigation. *Sexton v. Medicare*, 194 F. Supp. 3d 209, 214 (E.D.N.Y. 2016) (noting that the right to reimbursement only accrues after the beneficiary has received a primary payment). But outside of that specific scenario, in which a beneficiary will, essentially, shuttle funds from a primary payer to Medicare as secondary payer, beneficiaries are generally not expected to reimburse Medicare.

45

Of course, Appellants do not allege any of these hypothetical scenarios or conditions. Nor are there allegations that Appellants were even Medicare or Medicaid recipients, much less that any of them have been subject to, for example, a Medicaid lien, a cost recovery action, or any other Medicare/Medicaid claim. The bare possibility that such a claim *could* be made in the future is far too speculative to confer standing. DE-137 at 9–10 (App.XI-168–69) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Sexton*, 194 F. Supp. 3d at 214–15; *Hull v. Burwell*, 66 F. Supp. 3d 278, 280–83 (D. Conn. 2014).

### 3. The district court correctly concluded that Appellants failed to allege proximate causation for their RICO claims.

In addition to her unobjected-to conclusion that Appellants failed to allege with particularity predicate acts of racketeering (*see supra* at § I(A)(3)), the magistrate judge also concluded that Appellants' RICO claims failed because the Amended Complaint did not sufficiently allege proximate causation. DE-137 at 14–18 (App.XI-173–77). Although Appellants properly preserved an objection as to this aspect of the magistrate judge's RICO analysis, her proximate causation findings, adopted in full by the district court, should be affirmed.

To allege a RICO claim, a plaintiff must allege, that he or she has suffered an injury "by reason of" the alleged RICO violation. *See* 18 U.S.C. § 1964(c). For a subsection 1962(b) violation, that means the plaintiff must allege an injury caused by the defendant's acquisition or maintenance of an interest in or control of a RICO

46

enterprise, as distinct from any injury caused by the predicate acts themselves. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062–63 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998). For a subsection (c) violation, the plaintiff "plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity … was the but-for *and* proximate cause of the plaintiffs' injuries." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1349 (11th Cir. 2016) (emphasis in original).

Here, Appellants did neither. As for subsection (b),the Amended Complaint contains no allegations that Appellants suffered any injuries as a result of Bokor's alleged acquisition or maintenance of an interest in an alleged RICO enterprise. Turning to subsection (c), Appellants had to allege that the purported instances of mail and wire fraud—derived from alleged false claims submitted to Medicare and Medicaid—proximately caused Appellants harm. But as just explained, any injury from claims submitted to Medicare and/or Medicaid would run to Medicare and/or Medicaid, not Appellants.

Appellants' assertion that the district court got the causation issue wrong rests solely on another unpublished Clinic Act district court order, which found that fraudulently obtaining a license can support causation for a RICO claim related to a Clinic Act violation. *See* Br. at 28, 34 (citing *State Farm Mut. Auto Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *6–7 (M.D. Fla.

Dec. 21, 2011)). But Appellants' reliance on *Altamonte Springs* is misplaced. Above all, the plaintiff in *Altamonte Springs* was *not* attempting to recover funds paid by a third party, like Medicare or Medicaid. Instead, the plaintiff was attempting to recover funds that it had individually paid to the defendant clinic; the "standing" question, then, was not about whether a plaintiff can recover payments made by third parties, but whether the defendant clinic's alleged misrepresentations, which had been made to AHCA, rather than directly to the plaintiff, were actionable *under the Clinic Act*. Thus, *Altamonte Springs* says nothing at all about whether a plaintiff has standing to *personally* recover from the alleged owner of a management company for alleged false claims submitted to Medicare and/or Medicaid by a nursing facility with a license allegedly obtained on the basis of an incomplete license application. And *Altamonte Springs* is also not on point for all the reasons the other Clinic Act cases are inapt. *See supra* at § I(A)(3).

### 4. The district court's reference to Bokor as a "real estate broker" was inconsequential.

Even though the district court's ruling was based on hundreds of pages of briefing, hours of oral argument, and a detailed 27-page R&R which was adopted without caveat, Appellants make much ado of a single stray reference made by the district court. Specifically, Appellants take issue with the fact that the district court, in adopting the magistrate judge's R&R, referred to Bokor as a "real estate broker." Br. at 11–13. Appellants make this minor misstatement the centerpiece of their brief,

48

asserting that the misdescription of Bokor's alleged role somehow renders everything reversible. *Id.* But the district court's three-word misstatement is immaterial and harmless.

*First*, the district court adopted the findings and conclusions of the magistrate judge in their entirety. DE-158 (App.XII-205–10). The magistrate judge properly credited Appellants' allegations as to Bokor's status and role. DE-137 at 4 (App.XI-163) (citing DE-82 at ¶¶ 88–112). Because the district court relied on the findings of the magistrate judge, who made no error regarding Bokor's alleged role as asserted by Appellants, the district court's passing reference to Bokor's role in its order was inconsequential to the ultimate outcome.

*Second*, the exact nature of Bokor's role did not drive any of the issues considered by the district court. *See generally* DE-158 (App.XII-205–10). Appellants' own shifting claims as to Bokor's exact role underscore just how irrelevant his job title is to this case. In the Amended Complaint, Appellants alleged that Bokor was the president of purported management companies Reliant and Southern SNF. DE-82 ¶¶ 88–112 (App.III-218–28). Now, in their appellate brief, Appellants confusingly morph that into a statement that Bokor is the president and chief executive officer of the Facilities themselves. Br. at 9, 12. While the Court need not give any credence to the new factual allegations asserted by Appellants for the first time on appeal (and not contained in the operative complaint), *Citizens for*

*Smart Growth*, 669 F.3d at 1216, that new theory is irrelevant because Bokor's exact role is immaterial to the legal issues propelling this case. That is, Bokor's position is irrelevant to whether Appellants pled an actionable fiduciary duty, whether Appellants pled with particularity viable RICO predicate acts, whether the ocean of state court litigation being pursued by Appellants and/or their lawyers demand *Colorado River* abstention, or any of the other legal issues animating this appeal.

*Finally*, the error is negligible, in any event, because this Court can affirm the order of dismissal choosing from a menu of *other* dispositive bases that were not challenged by Appellants and have therefore been waived. Put another way, Bokor's role is irrelevant to the many dispositive grounds for dismissing this case that Appellants did not and do not challenge.

## II. The Court should affirm the district court's order denying Appellants leave to amend the operative complaint.

Appellants close by objecting—a year-and-a-half late—to an order denying them leave to file a second amended complaint. *See* Br. at 35. Not only did Appellants waive that objection in 2021, but their objection is unavailing.

As explained above, in a thorough nine-page order, the magistrate judge denied Appellants' motion for leave to file the second amended complaint as futile and untimely. *See supra* at 14–15; *see generally* DE-118 (App.XI-67–76). Appellants never objected to that order. Yet six months later, when the time came to object to the magistrate judge's motion to dismiss R&R, Appellants snuck an ultra-

50

tardy objection to the *motion to amend* order into their *motion to dismiss* objection. *See* DE-154 at 20–21 (App.XII-116–17). Recognizing as much, the district court concluded that Appellants' objection was "untimely under Federal Rule of Civil Procedure 72(a)." DE-158 at 4 (App.XII-209). Even then, the district court reviewed Appellants' objection and the second amended complaint, agreeing with the magistrate judge that their "proposed amendments were both futile and untimely, and [that] granting leave to amend again would have prejudiced [Bokor]." *Id.*

Appellants' re-renewed tardy objection thus fails both procedurally and substantively. Procedurally, Appellants waived their argument long ago. Under Rule 72, they had fourteen days from the magistrate judge's order—until September 30, 2021—to "serve and file objections to the order." Fed. R. Civ. P. 72(a). But they did not object until six months later—March 7, 2022. *See* DE-146 at 29–32 (App.XII-52–55). Rule 72 is clear: "[a] party may not assign as error a defect in the order not timely objected to." *Id.* And an objection waived below is waived in this Court too. *See Smith v. School Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) (internal quotation marks omitted) ("We have concluded that, where a party fails to timely challenge a magistrate's nondispositive order before the district court, the party waived his right to appeal those orders in this Court.").

At any rate, because Appellants' proposed second amended complaint was futile, their objection fails in substance too. Both the magistrate judge and district

court agreed: "[d]espite being given a chance to amend their pleading, the [appellants'] proposed second amended complaint does not address the deficiencies raised in the motions to dismiss, and instead merely includes inconsequential changes." DE-118 at 8 (App.XI-75). Appellants' superficial changes included changing then-co-defendant "Marcus & Millichap" to "MM," "rearranging paragraphs," and attempting to reassert an abandoned claim. *Id.* at 7 n.4 (App.XI-74). Yet for all that, Appellants mostly ignored Bokor's motion to dismiss arguments. For instance, the second amended complaint offered no material changes to Appellants' fiduciary duty theory. *See* DE-116 at 8 (App.X-221). Likewise, the second amended complaint's predicate act allegations still omitted the essential "who, what, where, when, how, and why" facts required by Federal Rule of Civil Procedure 9(b). *Id.* at 8–9 (App.X-221–22). In short, even after a third bite at the apple, Appellants could not plead a viable claim against Bokor. Thus, their proposed amendment was futile.

## CONCLUSION

Despite three opportunities to state a legally plausible claim against Bokor—two complaints and a proposed second amended complaint—Appellants failed to do so. At this point, there is no doubt that Appellants' legal theories and factual allegations are incurable. So, for all of the foregoing reasons, the Court should affirm the dismissal of Appellants' claims against Bokor.

Respectfully submitted on this, the 17th day of January, 2023.

**BRADLEY ARANT BOULT
CUMMINGS LLP**

*/s/ Zachary A. Madonia*
Michael R. Pennington
E-mail: mpennington@bradley.com
Zachary A. Madonia
E-mail: zmadonia@bradley.com
1819 5th Avenue N.
Birmingham, AL 35203
Phone:  (205) 521-8391
Fax:  (205) 488-6391

Diana N. Evans
E-mail: dnevans@bradley.com
Kyle W. Robisch
E-mail: krobisch@bradley.com
100 North Tampa Street, Suite 2200
Tampa, FL 33602
Phone:  (813) 559-5500
Fax:  (813) 229-5946

***Attorneys for Defendant/Appellee Michael
Bokor***

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 12,803 words, excluding the parts of the brief exempted by Rule 32(f).

2.      This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

/s/ <i>Zachary A. Madonia</i>
Counsel for Defendant/Appellee
Michael Bokor

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on January 17, 2023, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will provide electronic notification to counsel of record registered as electronic filers with the Court's CM/ECF system, and I also served the foregoing by electronic mail and U.S. mail upon the following counsel of record:

James L. Wilkes, II
Mary J. Perry
Bennie Lazzara, Jr.
WILKES & ASSOCIATES, P.A.
One North Dale Mabry Highway,
Suite 800
Tampa, FL 33609
P: (813) 873-0026
jimw@yourcasematters.com
mperry@yourcasematters.com
bennie@yourcasematters.com
dthomason@yourcasematters.com
fl@yourcasematters.com
*Attorneys for Plaintiffs/Appellants*

/s/ *Zachary A. Madonia*
Counsel for Defendant/Appellee
Michael Bokor